852 So.2d 1128 (2003)
Mary BRITT, Plaintiff-Appellant,
v.
Scott L. TAYLOR, D.D.S. and Medical Protective Insurance Services, Inc., Defendants-Appellees.
No. 37,378-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2003.
*1130 Gray & Gray by James A. Gray, III, James A. Gray, II, for Appellant.
Rountree, Cox, Guin & Achee by Gordon E. Rountree, Shreveport, for Appellees.
Before STEWART, MOORE and TRAYLOR (Pro Tempore), JJ.
STEWART, J.
The plaintiff, Mary Britt, appeals a summary judgment dismissing her malpractice suit against the defendant, Scott Taylor, D.D.S. For the following reasons, we affirm the trial court's judgment.

FACTS
On August 17, 1996, Mary Britt sought treatment from Dr. Taylor for a toothache. Britt was a walk-in patient who had not previously been treated by Dr. Taylor. Dr. Taylor took an x-ray and found the left lower third molar, a wisdom tooth, decayed and in need of extraction. Dr. Taylor extracted the tooth. Thereafter, Dr. Taylor treated Britt for a dry socket, described by Dr. Taylor as a "localized infectious situation," which developed at the extraction site. Antibiotics and pain medication were prescribed as part of the treatment for the dry socket. By October 8, 1996, the extraction site was healing, but Britt began complaining of pain in her lower left jaw area. Dr. Taylor's records indicate that he last heard from Britt on November 22, 1996, when she called for more pain medication; he refused to prescribe pain medication without an office visit.
Britt sought treatment on March 13, 1997, from Dr. Brian Smith, an oral and maxillofacial surgeon and the chief of the oral surgery division at Louisiana State University Medical Center in Shreveport *1131 (LSUMCS). Britt complained of left facial pain and numbness of the left lower lip and chin. Dr. Smith believed that Britt might be suffering from a neuroma of the left inferior alveolar nerve in the area adjacent to the extraction site. According to Dr. Smith, a neuroma is an abnormal healing of a nerve injury. Dr. Smith performed surgery on June 26, 1997, to remove the neuroma. Although Britt healed well from the surgery, she continued to report feelings of pain.
Britt filed a complaint with the Patient's Compensation Fund alleging malpractice on the part of Dr. Taylor. After delays apparently resulting from Britt's failure to timely submit evidence to the medical review panel, an opinion favorable to Dr. Taylor was finally rendered on October 31, 2001. Britt then filed suit against Dr. Taylor and his insurer, Medical Protective Company. The record does not include a copy of Britt's petition for damages, but it does include Dr. Taylor's answer in which he denied the allegations in Britt's petition and asserted that he met the standard of care in his treatment of Britt.
On June 2, 2002, Dr. Taylor filed a motion for summary judgment. Dr. Taylor argued that he met the standard of care as demonstrated by the opinion of the medical review panel and the deposition of Dr. Smith. Dr. Taylor further argued that Britt could not satisfy her burden of proof without a dental expert. In support of the motion for summary judgment, Dr. Taylor offered the favorable medical review panel opinion, the affidavit of a panel member, interrogatories establishing that Britt had not procured an expert, Dr. Taylor's affidavit and medical records, and the deposition of Dr. Smith with the medical records from LSUMC.
Thereafter, counsel enrolled on behalf of Britt and opposed the motion for summary judgment. Britt argued that there was an issue of fact as to whether Dr. Taylor met the standard of care. In addition, Brit asserted that Dr. Taylor did not inform her of the risk of injury to the inferior alveolar nerve and thus did not obtain her informed consent for the extraction. Britt offered the depositions of Dr. Taylor and Dr. Smith, her own affidavit, and two articles pertaining to the removal of wisdom teeth in support of her opposition to Dr. Taylor's motion.
At the hearing on the motion for summary judgment, the trial court sustained Dr. Taylor's hearsay objections to the articles submitted by Britt and granted the motion for summary judgment. In granting Dr. Taylor's motion, the trial court referred to the medical review panel's finding of no causation and concluded that without an expert, the plaintiff would not be able to establish causation and would therefore not reach the issue of informed consent.
On appeal, Britt argues that the trial court improperly applied the law of informed consent and failed to properly consider the deposition testimony of Dr. Taylor and Dr. Smith which established the existence and likelihood of the risk of injury to the alveolar nerve. Brit also argues that the trial court erred in finding no genuine issue of material fact as to whether Dr. Taylor met the standard of care and in relying on the conclusion of the medical review panel regarding causation.

DISCUSSION

Motion for Summary Judgment
The summary judgment procedure is designed to ensure the just, speedy, and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2); Lee v. Wall, 31,468 (La. App.2d Cir.1/20/99), 726 So.2d 1044. A summary judgment is subject to a de novo *1132 review on appeal. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191.
A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Material facts are those which potentially ensure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Hardy v. Bowie, 98-2821 (La.09/08/99), 744 So.2d 606; Demopulos v. Jackson, 33,560 (La.App.2d Cir.6/21/00), 765 So.2d 480.
When the moving party will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant is not required to negate all the essential elements of the adverse party's claim. Rather, the movant need only point out an absence of factual support for one or more elements essential to the adverse party's claim. Then, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and the movant is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Hinson v. Glen Oak Retirement Home, 34,281 (La.App.2d Cir.12/15/00), 774 So.2d 1134.
The law is clear that the adverse party may not rest on the mere allegations or denials of his pleading when faced with a properly supported motion for summary judgment. Rather, the adverse party must respond with specific facts showing a genuine issue for trial or else summary judgment shall be rendered against him. La. C.C.P. art. 967; Demopulos v. Jackson, supra.

Dental Malpractice
La. R.S. 9:2794(A) provides that a plaintiff in a malpractice action shall have the burden of proving the following:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by ... dentists ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances....
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
The burden set forth in La. R.S. 9:2794(A) requires the plaintiff to prove the applicable standard of care, the breach of the standard of care, and the causal connection between the breach and the resulting injuries. Orea v. Brannan, 30,628 (La.App.2d Cir.6/24/98), 715 So.2d 108; Hinson, supra.
The fact that an injury occurred does not raise a presumption of negligence. La. R.S. 9:2794(C); Yuska v. HCA Health Services of Louisiana, Inc., 28,878 (La.App.2d Cir.12/11/96), 684 So.2d 1093. Moreover, a physician (or dentist) is not held to a standard of absolute precision. The conduct of the dentist is not evaluated on the basis of hindsight or in light of subsequent events, but it is evaluated in terms of reasonableness under the then-existing circumstances. Yuska, supra; Iseah v. E.A. Conway Memorial Hospital, 591 So.2d 767 (La.App. 2d Cir.1991), writ denied, 595 So.2d 657 (La.1992).
*1133 Britt argues that the trial court erred in granting summary judgment as to her medical malpractice claim. She asserts that there are genuine issues of material fact as to whether her injury was caused by Dr. Taylor during the extraction and as to whether Dr. Taylor's method of extraction fell below the standard of care.
With regard to causation, Britt correctly points out that while the medical review panel concluded that there was no causative link between the conduct complained of and the resulting damages, the panel also concluded in its reasons that Britt "appears to be part of the very small percentage that suffers from nerve damage." This latter statement is indicative of a causative link between the extraction of Britt's wisdom tooth and the resulting nerve injury. As such, the medical review panel's conclusion regarding causation is suspect and should not have been relied on by the trial court in granting summary judgment.
The record, particularly the deposition testimony of Dr. Smith, establishes that a neuroma or injury to the alveolar nerve which causes numbness and pain is a risk, though rare, associated with the extraction of a wisdom tooth. Dr. Smith further stated in his deposition that the abnormal area, which he believed to be a neuroma, was adjacent to the extraction site. These factors, in addition to the contradictory statements of the medical review panel in its opinion and written reasons, certainly create a genuine issue of material fact as to whether Britt's damages were caused by the extraction.
However, Britt failed to come forward with sufficient facts to establish a genuine issue of material fact for trial with regard to whether Dr. Taylor breached the standard of care in extracting her wisdom tooth. Britt points out the fact that Dr. Taylor described the extraction as "simple" and "routine," whereas Dr. Smith concluded after reviewing x-rays taken prior to the extraction that the extraction would appear to be a "difficult" one and that he would have broken the tooth in half and removed it in segments. Britt argues that this difference of opinion creates an issue of material fact as to whether Dr. Taylor breached the standard of care.
Expert testimony is not required to meet the burden of proof in a medical malpractice case involving an obvious careless act from which a lay person can infer negligence, such as the failure to respond to an emergency, amputation of the wrong limb, or the leaving of a sponge in a patient's body after surgery. Pfiffner v. Correa, 94-0924, 94-0963 (La.10/17/94), 643 So.2d 1228, rehearing denied. Otherwise, expert testimony is necessary to determine whether the defendant possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence. Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991); Hinson, supra. Expert testimony is especially necessary where the defendant in a medical malpractice action has filed a motion for summary judgment supported by expert opinion evidence that his treatment met the applicable standard of care. Lee v. Wall, supra.
Dr. Taylor supported his motion for summary judgment with the opinions of experts who concluded that he met the standard of care. The medical review panel, whose opinion was offered in support of the motion for summary judgment, concluded that Dr. Taylor met the standard of care. The affidavit of Jeffrey Jeter, D.D.S., a member of the medical review panel, was also offered by Dr. Taylor. In the affidavit, Dr. Jeter concluded that Dr. Taylor met the standard of care of general dentistry. He believed the tooth needed to be extracted, that it was not extracted *1134 in error, and that there was no indication of abnormal trauma.
Dr. Taylor also offered the deposition of Dr. Smith. When directly asked his opinion as to whether Dr. Taylor did anything wrong, Dr. Smith responded that he did not know and that he neither discussed the matter with Dr. Taylor nor reviewed his records. However, elsewhere in his deposition, Dr. Smith explained that he discussed with Britt the fact that nothing appeared to have been done wrong at the time of the extraction. He noted that the extraction site was well-healed and that he saw no bone cuts, no signs of major trauma, and nothing left behind. Dr. Smith could not explain why the neuroma developed. He did state that numbness can result without there having been any negligence, and he expressed the opinion that a bad outcome does not necessarily mean something was done wrong. Dr. Smith neither stated nor suggested that Dr. Taylor's performance fell below the standard of care.
In the absence of any evidence, expert or otherwise, that Dr. Taylor breached the standard of care in extracting Britt's tooth, Britt will not be able to meet her evidentiary burden at trial. Reliance upon Dr. Smith's opinion that the extraction appeared to be a difficult one is not sufficient to create an issue of fact for trial inasmuch as Dr. Smith did not indicate or suggest that Dr. Taylor did anything wrong in extracting Britt's tooth. Dr. Taylor met his burden of showing an absence of factual support for an element of Britt's malpractice claim, namely that Britt would be unable to prove that he breached the standard of care. Britt then failed to come forward with sufficient factual support to show that she would be able to meet her evidentiary burden at trial. Accordingly, summary judgment on the claim of malpractice was properly granted.

Informed Consent
The informed consent doctrine is based on the principle that every adult of sound mind has the right to determine what shall be done to his or her own body. LaCaze v. Collier, 434 So.2d 1039 (La. 1983). Where circumstances permit, a patient should be told the nature of the pertinent ailment or condition, the general nature of the proposed treatment or procedure, the risks involved, the prospects of success, the risks of failing to undergo the treatment or procedure, and the risks of any alternative methods of treatment. Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988), on rehearing.
An action based on lack of informed consent for dental treatment is governed by La. R.S. 40:1299.131, which sets forth the plaintiff's burden of proof as follows:
E. In any action for damages in which it is alleged that a patient underwent a dental treatment or a course of dental treatment without his informed consent, the plaintiff shall have the burden of proving, by a preponderance of the evidence, that:
(1) The defendant dentist failed to disclose a risk of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of an organ or limb, or disfiguring scars associated with such dental treatment or course of dental treatment which would ordinarily have been disclosed under the same or similar circumstances by dentists with the same or similar training and experience;
(2) Such undisclosed risk did occur; and
(3) A reasonably prudent person in the patient's position would not have undergone the dental treatment or *1135 course of dental treatment had he been properly informed.
La. R.S. 40:1299.131(E). The plaintiff bears the burden of proving the existence of a material risk unknown to the patient, the physician's failure to disclose the material risk, and that the disclosure of the material risk would have led a reasonable person in the patient's position to either reject the treatment or choose a different course of treatment. Yuska, supra; Roberts v. Cox, 28,094 (La.App.2d Cir.2/28/96), 669 So.2d 633.
A physician's (or dentist's) duty to disclose all material risks encompasses those risks which a reasonable person in the patient's position would attach significance to in deciding whether to proceed with or forego a proposed therapy. Hondroulis, 553 So.2d at 412. A two-step process exists to determine whether a risk is material. First, the plaintiff must define the existence and nature of the risk as well as the likelihood of its occurrence. This requires "some" expert testimony. Second, the plaintiff must show that the probability of the type of harm is a risk which a reasonable person would consider in deciding on treatment. Expert testimony is not required for this determination. Id.
The plaintiff is also required to prove a causal connection between the failure to disclose the material risk and the damage to the patient. Due to the likelihood of a patient's bias in testifying in hindsight, the supreme court has adopted an objective standard of causation which asks whether a reasonable patient in the plaintiff's position would have consented to the treatment had the material risk been disclosed. Hondroulis, 553 So.2d at 412; Elkins v. Key, 29,977 (La.App.2d Cir.10/29/97), 702 So.2d 57.
Britt argues that Dr. Taylor failed to inform her of the risk of injury to the inferior alveolar nerve and that had she known of this risk of injury, she would have consulted an oral surgeon rather than allow Dr. Taylor to perform the extraction. Britt asserts that the risk of injury to the inferior alveolar nerve is a material risk that was unknown to her.
Dr. Taylor admitted that he did not inform Britt of the risk of injury to the inferior alveolar nerve. In his affidavit, he describes the risk of injury as a "very, very remote risk" and states that he has never had such an injury occur. In his deposition, which Britt submitted in opposition to the motion for summary judgment, Dr. Taylor stated that he would inform patients of the risk of severing or injuring the inferior alveolar nerve "if it was apparent that there was the remotest possibility of severing a nerve." He further stated that he was not aware of any possibility of injuring the plaintiff's nerve during the extraction, so he did not advise her of this risk of injury.
In his deposition, Dr. Smith indicated that he warns patients of the possibility of numbness as a result of an extraction. When asked whether one would have to warn a patient about the risk of a neuroma, Dr. Smith replied, "Not really. Very, very rare." Dr. Smith stated that he had seen no neuromas in his own practice, and he described the injury as a "very uncommon" and "rare" problem.
While it is clear that Dr. Taylor did not warn Britt of the risk of injury to the inferior alveolar nerve, the evidence offered in opposition to summary judgment does not create an issue of fact as to whether the risk of injury was a material risk which Dr. Taylor should have advised Britt to obtain her informed consent. The expert testimony offered in support of and in opposition to Dr. Taylor's motion for summary judgment establishes that there *1136 is a risk of injury to the inferior alveolar nerve, but that such a risk is very remote and rare and need not be disclosed. The law does not require disclosure of all known risks, particularly such risks which are slight and immaterial. See Hondroulis, 553 So.2d at 418. Such a remote risk is not the type which a reasonable person in the plaintiff's position would consider in deciding whether to proceed with, forego, or delay an extraction of a very decayed wisdom tooth; otherwise extraction of wisdom teeth would be rare occurrences.
Finding no issue of fact as to the materiality of the risk of injury to the inferior alveolar nerve, we must conclude that summary judgment was properly granted in favor of Dr. Taylor as to the informed consent claim.

CONCLUSION
For the aforementioned reasons, we affirm the trial court's summary judgment dismissing the claims of Mary Britt against Dr. Scott Taylor. Costs of the appeal are assessed to the appellant.
AFFIRMED.