859 So.2d 931 (2003)
Ethel M. DAVIS, et al., Plaintiffs-Appellants,
v.
Dr. Steven M. ATCHISON, et al., Defendants-Appellees.
No. 37,832 CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2003.
*933 Murphy J. White, Mansfield, for Appellants.
Robert G. Pugh, Jr., Shreveport, for Appellees, Steven M. Atchison, M.D. and William L. Overdyke, M.D.
Robert W. Robison, Jr., Baton Rouge, for Appellee, Willis-Knighton Medical Center.
Before WILLIAMS, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
This medical malpractice action was instituted against two physicians who performed bilateral simultaneous total knee replacement surgeries on an eighty-two year old woman. The surgeries had been cleared by the patient's primary care physician despite her age and diabetic and hypertensive history. Though the surgery occurred without incident, the patient developed heart and respiratory difficulties in the recovery room. Thereafter, she experienced further complications and remained hospitalized until her eventual death nearly one month after the knee procedures. The trial court granted summary judgment in favor of both doctors. After de novo review, we affirm.

Facts
On February 17, 2000, Ethel Davis visited the offices of Dr. Steven Atchison, an orthopedic surgeon, with complaints of long-standing arthritic pain in both knees. Although Dr. Atchison recommended knee injections, Davis insisted that she desired bilateral knee replacement surgery because long-term conservative treatment had offered her no relief. Davis and her husband, William, inquired about the possibility of simultaneous bilateral knee replacement surgery. Dr. Atchison disclosed both the benefits and risks attendant to such surgery and Davis opted for the simultaneous procedure. Dr. Atchison informed Davis that she would be required to obtain a medical evaluation for preoperative clearance from a primary care physician. For that evaluation, Davis chose her long-time primary care physician, Dr. William Dillard, who approved her for the surgery on February 24, 2000.
On March 28, 2000, Davis underwent bilateral simultaneous total knee arthroplasties at Willis Knighton Medical Center without incident. Dr. Atchison, assisted by Dr. William Overdyke, performed the procedure on Davis's right knee. Dr. Overdyke was assisted by Dr. Atchison in performing the left knee procedure. Davis entered the recovery room "awake, alert and in stable condition." However, while in the recovery room, Davis's heart rate and blood pressure dropped and she experienced respiratory distress. She also had periods of unresponsiveness, during which she aspirated. Davis was later placed on a ventilator and required adjustments to her insulin dosage as her diabetes had become uncontrollable. Davis remained hospitalized until her death on April 26, 2000, due to an infection and the overall deterioration of her heart, lung, kidney and intestinal functions.
*934 William Davis and the eleven Davis children filed a medical review panel petition against Drs. Atchison and Overdyke and Willis Knighton Medical Center. The medical review panel unanimously rejected the Davis family claims, concluding that the dual surgeries were not precluded by her age and medical condition and posed no greater risk than a single knee replacement.
The Davis family instituted the present malpractice suit against the two surgeons and Willis Knighton Medical Center, specifically alleging that due to Davis's age and medical conditions, the physicians were at fault in performing the simultaneous knee replacement surgery which caused her death. Drs. Atchison and Overdyke filed motions for summary judgment supported by the findings of the medical review panel. After the trial court granted summary judgment in favor of the doctors and dismissed the malpractice action against them, this appeal ensued.

Discussion
On appeal, the plaintiffs contend that the summary judgment was inappropriate because there exists conflicting expert opinions as to whether the bilateral knee replacement should have been performed on Ethel Davis.
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. This article was amended in 1996 to provide that the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Racine v. Moon's Towing, 01-2837 (La.5/14/02), 817 So.2d 21. In 1997, the legislature enacted La. C.C.P. art. 966 C(2), which further clarified the burden of proof in summary judgment proceedings. This provision first places the burden of producing evidence for summary judgment on the mover (normally the defendant), who can ordinarily meet the burden by submitting affidavits or by pointing out the lack of factual support for an essential element of the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. Racine, supra, citing Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Racine, supra. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Gray v. Investment Cars Unlimited, Inc., 36,691 (La.App.2d Cir.1/29/03), 836 So.2d 1184, writ denied, 03-0670 (La.5/2/03), 842 So.2d 1108.
Expert opinion testimony in the form of affidavit or deposition may be considered in support of or opposition to a motion for summary judgment. Independent Fire Ins. Co. v. Sunbeam, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 236. See also La. C.C.P. art. 967 as amended by 2003 La. Acts, No. 545. Even so, the trial court should not make credibility determinations on summary judgment nor attempt to evaluate the persuasiveness of competing scientific studies. If a party submits admissible expert opinion evidence in opposition *935 to a motion for summary judgment which is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial judge should deny the motion and let the issue be decided at trial. Independent Fire Ins. Co., supra.
From our review of the evidence, we agree with the trial court's dismissal of the defendants from this malpractice action. In support of their motions for summary judgment, the physicians submitted the favorable opinion of the medical review panel which concluded that the evidence was insufficient to support the conclusion that Drs. Atchison and Overdyke failed to meet the applicable standard of care and that the subject conduct was not a factor in causing the claimed damages. Additionally, both doctors submitted their own affidavits with a narrative summary by Dr. Atchison of his treatment of Davis. Both doctors attested that their treatment and that of the other physician was within the applicable standard of care. Finally, the doctors submitted copies of five medical journal articles which compared bilateral knee replacement with staged replacement.
A favorable affidavit by the treating physician and a favorable opinion by the medical review panel are sufficient to establish an absence of factual support for a plaintiff's claims. Savage v. McConnell, 36,441 (La.App.2d Cir.10/23/02), 830 So.2d 414; Hinson v. Glen Oak Retirement Home, 34,281 (La.App.2d Cir.12/15/00), 774 So.2d 1134. On these grounds, we find that the evidence presented by Drs. Atchison and Overdyke is sufficient to point out an absence of factual support for the malpractice claim.
In opposition to the summary judgment, plaintiffs submitted only the report of Dr. Dale Bernauer who stated:
I think that doing a bilateral total knee on a patient this age with the medical problems is ill advised. Whether it constitutes negligence, I do not feel that per se this is negligent. I do think it is not the optimum thing to do.... As stated, I cannot say it was negligent to do both knees, but I think it is ill advised on a patient this age with medical problems, and she would have been better served with doing one total knee and then doing the other one at a later date being sure that all medical problems were taken care of before this.
In a medical malpractice action, the plaintiff must prove the applicable standard of care, that the physician lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and the causal connection between the breach and the resulting injury. La. R.S. 9:2794(A); Britt v. Taylor, 37,378 (La.App.2d Cir.8/20/03), 852 So.2d 1128; Orea v. Brannan, 30,628 (La.App.2d Cir.6/24/98), 715 So.2d 108. Generally at trial, a plaintiff must prove the applicable standard of care through expert medical testimony unless, "the physician does an obviously careless act ... from which a lay person can infer negligence." Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228 at 1233; Strange v. Shroff, 37,353 (La.App.2d Cir.7/16/03), 850 So.2d 1077. Opinions from medical professionals are necessary for the determination of the applicable standard of care and whether or not that standard was breached. Strange, supra. Expert testimony is especially necessary where the defendant in a medical malpractice action has filed a motion for summary judgment supported by expert opinion evidence that his treatment met the applicable standard of care. Britt, supra.
The plaintiffs' argument does not insist that no surgery should have been undertaken *936 upon Davis, but only that a shorter, single knee replacement surgery should have occurred. The plaintiffs do not show that the actual incisions upon Davis's knee were negligently performed and do not demonstrate how the complications Davis encountered in the recovery room relate to a negligent act by either defendant.
The only evidence presented by plaintiffs in opposition to the summary judgment was that of Dr. Bernauer, who twice concluded that the decision to perform simultaneous bilateral knee replacement surgery on Davis, while ill-advised, did not breach the standard of care so as to constitute negligence. Moreover, the report of Dr. Bernauer neither sets forth the applicable standard of care nor states that the actions of the physicians were the cause of plaintiffs' claimed damages. This evidence fails to produce factual support sufficient to establish that plaintiffs will be able to prove at trial the applicable standard of care, a breach thereof or causation. In these circumstances, summary judgment in favor of Drs. Atchison and Overdyke was appropriate. The judgment of the trial court is affirmed at plaintiffs' costs.
AFFIRMED.