920 So.2d 988 (2006)
Gary HENDERSON, et al., Plaintiffs-Appellants,
v.
HOMER MEMORIAL HOSPITAL, et al., Defendants-Appellees.
No. 40,585-CA.
Court of Appeal of Louisiana, Second Circuit.
January 27, 2006.
*989 Sentell Law Firm, LLC. by Sherburne Sentell, Jr., for Plaintiffs-Appellants.
Law Offices of William E. Bourgeois by William E. Bourgeois, Monroe, Sharp, Henry, Cerniglia, Colvin, Weaver & Hymel by James H. Colvin, Shreveport, for Defendants-Appellees Homer Memorial Hospital and St. Paul Fire and Marine Insurance Company.
Before STEWART, GASKINS and LOLLEY, JJ.
GASKINS, J.
The plaintiffs, Gary Henderson, Jerry Henderson, and Donny Henderson, appeal a decision by the trial court denying their motion for summary judgment and granting summary judgment in favor of the defendants, Homer Memorial Hospital, *990 Town of Homer, and its insurer, St. Paul Fire and Marine Insurance Company. For the following reasons, we affirm.

FACTS
This case arises from the death of the plaintiffs' father, 57-year-old Phillip Abbott, in January 2000. Mr. Abbott was admitted to Homer Memorial Hospital on January 2, 2000, with shortness of breath, nausea, and loss of appetite. Because Mr. Abbott had previously been treated for tuberculosis, he was placed in a room for respiratory isolation. It was determined that he had pneumonia in the right lung and a mass in the left lung with emphysema in both lungs.
Oxygen was ordered for Mr. Abbott. According to the plaintiffs, he was sometimes confused and took off the mask used to administer oxygen. On January 5, he complained of nausea and was given Dramamine. At 10:20 a.m., a respiratory therapist entered the room to administer a breathing treatment. Mr. Abbot was found face down on the floor. He had aspirated vomit into his lungs; he was not breathing and had no pulse. Resuscitation efforts were undertaken and Mr. Abbot was airlifted to Schumpert Medical Center in Shreveport later that day. He died on January 8, 2000.
The plaintiffs instituted proceedings against the hospital for wrongful death, a survival claim, and loss of chance of survival. They claimed that the hospital failed to properly monitor Mr. Abbott when he was nauseous, was wearing a face mask, and was not mentally able to care for himself. They contended that the nursing staff failed to check on him as frequently as necessary. According to the plaintiffs, this was a breach in the standard of care. Their claims were presented to the Patients' Compensation Fund (PCF) on January 4, 2001. A medical review panel (MRP) was convened and rendered an opinion on October 22, 2002.
The MRP found that the evidence did not support the conclusion that the hospital failed to meet the appropriate standard of care, as charged in the plaintiffs' complaint. According to the MRP, Mr. Abbott was seen by the nursing staff at regular intervals and was also seen by the respiratory therapist three to four times per day for breathing treatments. The attending physician saw Mr. Abbott on rounds each day and the physician's orders appeared to be carried out in a timely manner. The MRP noted that Mr. Abbott was allowed to ambulate and was using the oxygen mask intermittently as needed. The MRP found that the facts did not heighten any requirement of the nursing staff to more intensely monitor Mr. Abbott in his room. The MRP noted that a fall prevention risk assessment sheet was completed when Mr. Abbott was admitted to the hospital and he was found to be at low risk for experiencing a fall.
The plaintiffs filed suit against the hospital, alleging negligence in the treatment of Mr. Abbott. The plaintiffs later amended their petition to also allege that the hospital was negligent in failing to formulate a fall prevention plan. They argued that the fall and Mr. Abbott's death were the result of deviations below the applicable nursing standard of care, including the failure to formulate and/or implement a "falls care" plan.
Approximately five years after Mr. Abbott's death, the hospital filed a motion for summary judgment, arguing that the plaintiffs failed to show that the actions of the hospital personnel were a substantial cause-in-fact of the injury. The hospital argued that the plaintiffs lacked the requisite medical testimony to prosecute the case. The hospital contended that, because the plaintiffs failed to produce any *991 competent testimony to establish that the actions of hospital personnel were a substantial cause-in-fact of the alleged injury, there is no genuine issue of material fact as to causation and the hospital is entitled to judgment as a matter of law.
The hospital submitted the plaintiffs' answers to interrogatories showing that a deposition from James Starkey, the plaintiffs' nursing expert, and the medical records were the only support that the plaintiffs had for their cause of action. The hospital attached a certified copy of the medical records which included an assessment of the patient's risk of falling and found him to be at low risk. The hospital also attached the opinion of the MRP showing that the hospital did not deviate from the applicable standard of care in treating Mr. Abbott.
The hospital also attached portions of the deposition of Mr. Starkey, who was questioned about whether he had any criticism about the fact that Mr. Abbott was found on the floor. He was asked, "in other words, do you in any way blame or criticize Homer Medical Hospital for the fact that Mr. Abbott was found on the floor like he was found?" Mr. Starkey replied, "No sir. We find patients on the floor all the time." Mr. Starkey also stated that he had no criticism of the way in which matters were handled after the patient was found on the floor.
The plaintiffs filed an opposition to the motion for summary judgment. They alleged that Mr. Starkey's deposition testimony was taken out of context and that the hospital breached the applicable standard of care by failing to have a "falls care" plan in place for Mr. Abbott. The plaintiffs claimed that during the course of the proceedings, they became aware of the case of Cook v. Jefferson Parish Hospital Service District No. 2, 04-17 (La.App. 5th Cir.5/26/04), 876 So.2d 173, writ granted on other grounds, 2004-2134 (La.12/18/04), 888 So.2d 819, which they contend stands for the proposition that the failure to have a fall prevention plan establishes that the hospital breached its standard of care.
The plaintiffs also attached an affidavit from Mr. Starkey outlining his nursing qualifications. He stated that he had reviewed the hospital records and the MRP opinion and that he disagreed with the opinion of the MRP. He stated that the nursing care in this case fell below the standard of care and more likely than not caused or contributed to Mr. Abbott's demise. He said that the patient's lack of oxygen, mental confusion, and getting out of bed unsupervised led to his fall and his aspiration of vomit. Mr. Starkey claimed that the standard of care was breached in failing to document Mr. Abbott's oxygen level when he first came to the emergency room, in failing to monitor the patient frequently enough considering his confusion and low oxygen levels, and in failing to check his oxygen levels for 12 hours on the night before he died. Mr. Starkey claims that these factors show that the patient was not being monitored closely enough. Mr. Starkey noted that he did not address the "falls care" plan in his deposition. He contended that the initial fall risk assessment made when Mr. Abbott was admitted to the hospital was not sufficient to constitute a "falls care" plan.
Mr. Starkey sought to clarify his comments that he attributed no fault to the hospital in finding Mr. Abbott on the floor. He said:
I was not addressing then what I now understand is that, as a matter of law, a hospital is liable for the negligence of nurses under a doctrine known as respondeat superior in the legal profession. I was referring to the simple fact that patients are sometimes found on the floor by the nursing staff for various *992 reasons. I meant by that statement that I did not fault the Homer hospital "administration" or owners for the fact that Mr. Abbott was found on the floor by the respiratory therapist. However, it has been pointed out to me after the deposition that the hospital administration is liable, as a matter of law for the negligence of their nursing staff. I was not addressing the legal aspects of a patient being found on the floor. I only meant it happens from time to time and I didn't think it was the direct fault of the hospital (administrative staff or owners). Having been told that the hospital is responsible for the nurses' fault, I would have to alter that statement to say that if a hospital is always liable for the actions of the nurses, then I still may not "blame" the hospital for what occurred, but would still criticize the nursing care for which the hospital is apparently legally liable.
Also in support of their opposition to the defendant's motion for summary judgment, the plaintiffs attached a copy of a "falls care" plan from another health care facility, a copy of Cook v. Jefferson Parish Hospital Service District No. 2, supra, and the fall risk assessment made in this case when Mr. Abbott was admitted to the hospital.[1] The plaintiffs contend that this documentation shows that there are genuine issues of material fact regarding whether the hospital breached its standard of care in failing to implement a "falls care" plan in this case and in failing to properly monitor Mr. Abbott.
The plaintiffs argued that the doctrine of res ipsa loquitur applied and that fact, coupled with the Mr. Starkey's affidavit, established that the hospital was responsible for the injury and death of the decedent and was sufficient proof to withstand the hospital's motion for summary judgment.
In response to the opposition, the hospital filed a reply and attached the affidavit of its nursing expert, Debra Baggett-Woodard, who stated that the medical records show that the patient was briefly confused upon admission to the hospital, but then remained alert and oriented. She stated that Mr. Abbott was at low risk for falling. Ms. Baggett-Woodard stated that the standard of care was not breached and that the nursing care in this case did not cause or contribute to finding Mr. Abbott on the floor in an unresponsive condition.
The plaintiffs also filed a motion for summary judgment, claiming that the hospital never implemented a "falls care" plan. The plaintiffs cite Cook v. Jefferson Parish Hospital Service District No. 2, supra, for the proposition that the failure to devise and implement a "falls care" plan constituted a breach of the standard of care, entitling them to judgment against the hospital. According to the plaintiffs, on admission to the hospital, Mr. Abbott's risk of falling was assessed, but the hospital never followed up to implement an appropriate plan, even though Mr. Abbott was in the hospital several days and his condition was deteriorating. The plaintiffs attached to their motion the affidavit from Mr. Starkey, discussed above. According to him, the initial admission assessment was not the same as having a "falls care" plan. Therefore, the plaintiffs claimed entitlement to summary judgment.
*993 A hearing on the motions for summary judgment was held in March 2005. The trial court stated that there was no dispute that Mr. Abbott was found on the floor of his room with vomit in the initial portion of his respiratory tract. Because the court found that there was a disputed issue of fact regarding the existence of a "falls care" plan, it denied the motion for summary judgment filed by the plaintiffs. The court questioned whether such a plan was hospital policy or whether it was to be individualized for each patient. There was some question as to whether the patient's evaluation at admission was sufficient to meet the requirement or whether a separate plan was necessary. According to the court, Mr. Starkey was a sufficient witness on the question of the standard of care.
The trial court granted the motion for summary judgment filed by the hospital. The court stated that Mr. Starkey was not a sufficient countervailing affiant to prove that the actions of the hospital personnel were a substantial cause-in-fact of the injury. The court certified the judgment as an appealable final judgment. The plaintiffs appealed, urging numerous assignments of error.

LEGAL PRINCIPLES
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. This article was amended in 1996 to provide that the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Davis v. Atchison, 37,832 (La.App.2d Cir.10/29/03), 859 So.2d 931.
In 1997, the legislature enacted La. C.C.P. art. 966 C(2), which further clarified the burden of proof in summary judgment proceedings. This provision first places the burden of producing evidence for summary judgment on the mover (normally the defendant), who can ordinarily meet the burden by submitting affidavits or by pointing out the lack of factual support for an essential element of the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. Davis v. Atchison, supra.
Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Davis v. Atchison, supra.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Davis v. Atchison, supra. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Row v. Pierremont Plaza, L.L.C., 35,796 (La.App.2d Cir.4/3/02), 814 So.2d 124, writ denied, XXXX-XXXX (La.8/30/02), 823 So.2d 952.

DISCUSSION
The plaintiffs have raised numerous assignments of error, arguing that the trial court erred in granting summary judgment in favor of the hospital and in denying *994 summary judgment in favor of the plaintiffs. They argue that the trial court erred in finding that causation was an issue that must be proved at the summary judgment level. They also maintain that the trial court erred in determining that a registered nurse lacked sufficient expertise to testify on the issue of causation. The plaintiffs assert that the trial court failed to apply the doctrine of res ipsa loquitur, as well as the rule that all inferences of fact should be drawn in favor of the opposing party in a summary judgment hearing. According to the plaintiffs, the trial court erred in requiring that they show that the fall caused their father's death. They maintain they only had to show that the fall caused some harm. The plaintiffs assert that they met that burden of proof. They urge that the trial court improperly weighed the credibility of the MRP against the affidavit of the plaintiffs' nursing expert in granting summary judgment in favor of the hospital.
In reviewing the motions for summary judgment de novo, we have examined all the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits" to determine if there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Based upon this review, we conclude that the plaintiffs' arguments are without merit.

Causation
The plaintiffs contend that the trial court erred in finding that causation was an issue that must be proven at the summary judgment level. In a related argument, the plaintiffs contend that, on a motion for summary judgment, they are not required to show that the alleged negligence of the nursing staff caused Mr. Abbott's death, only that it caused some harm. They maintain that they made such a showing.
Malpractice claims against a hospital are subject to the general rules of proof applicable to any negligence action. A plaintiff must prove that the defendant had a duty to protect against the risk involved, that the defendant breached its duty and that the plaintiff's injury was caused by the defendant's conduct. Moore v. Willis-Knighton Medical Center, 31,203 (La. App.2d Cir.10/28/98), 720 So.2d 425.
Hospitals are held to a national standard of care. The locality rule does not apply to hospitals. Hospitals are bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. Moore v. Willis-Knighton Medical Center, supra.
In a medical malpractice action, the plaintiff has the burden of proving the applicable standard of care, the breach of the standard of care, and the causal connection between the breach and the resulting injuries. Robertson v. West Carroll Ambulance Service District, 39,331 (La. App.2d Cir.1/26/05), 892 So.2d 772, writ denied, XXXX-XXXX (La.4/22/05), 899 So.2d 577. See also Griffin v. HCA Highland Hospital, Inc., 31,741 (La.App.2d Cir.3/31/99), 732 So.2d 624.
While the question of causation is usually an issue for the factfinder's determination, it is possible to determine this issue on summary judgment if reasonable minds could not differ. Row v. Pierremont Plaza, L.L.C., supra. The mere scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable *995 jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. Berry v. City of Bossier City, 40,063 (La.App.2d Cir.9/8/05), 911 So.2d 333.
Establishing causation is an essential element in the plaintiffs' claim. After the defendant asserted by means of a motion for summary judgment that the plaintiffs did not have sufficient evidence to prove causation, the plaintiffs were required to show that they would be able to meet their burden of proof at trial. Accordingly, the trial court did not err in considering whether the plaintiffs made a sufficient showing that the actions of the hospital were the cause-in-fact of Mr. Abbott's fall and, ultimately, his death.
Mr. Starkey, in his deposition, pointed to numerous areas he claimed were breaches in the applicable standard of care. Many of these claimed discrepancies occurred on admission and had no bearing on the patient's fall. While Mr. Starkey contended that the patient should have been monitored more carefully, regarding the actual fall, he stated that the patient had bathroom privileges and there is no way to know if he fell while walking to the bathroom or whether he fell out of bed. Even though Mr. Starkey asserted that the hospital nursing staff breached its standard of care by not monitoring Mr. Abbott more closely, he gives no indication of how often the patient should have been checked.
Mr. Starkey originally stated that he did not find fault with the hospital in discovering Mr. Abbott on the floor. He then sought to qualify that statement. The original question and answer were clear. The movant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony. Berry v. City of Bossier City, supra; Row v. Pierremont Plaza, L.L.C., supra. The explanation contradicting his earlier statement does not convey a genuine misunderstanding regarding the facts. Therefore, Mr. Starkey's affidavit contradicting his deposition does not establish a genuine issue of material fact.
Based on the record before us, the plaintiffs have failed to show that any actions by the hospital personnel were the cause-in-fact of the harm. The hospital records show that the patient was initially confused on admission, but was allowed by his physician to get out of bed to use the bathroom throughout his hospital stay. When Mr. Abbott's physician made rounds on the morning before this incident, the patient was able to talk with him. The medical records show that throughout his hospital stay, the plaintiff was checked approximately every two hours. He was checked at 8:45 a.m. on January 5, 2000, and was found on the floor at approximately 10:20 a.m. There is no showing that the decedent suffered any physical injury as a result of the fall. Most significantly, there is no showing of the cause of death in this case. Even though the plaintiffs have shown that the patient was found on the floor and aspirated vomit, there is no showing that this was caused by hospital negligence. The plaintiffs have simply failed to establish that the fall, aspiration, and subsequent death might not have occurred even if a nurse had been in the room at the time it happened. In short, considering all the documentation submitted in this case, the plaintiffs have failed to establish cause, an essential element of their claim necessary to defeat summary judgment.

Expert Opinion
The plaintiffs complain that the trial court erred in finding that Mr. Starkey was not qualified to give an expert opinion on causation in this matter. Expert opinion testimony in the form of affidavits or depositions may be considered in support *996 of or in opposition to a motion for summary judgment. Davis v. Atchison, supra. Even so, the trial court should not make credibility determinations on summary judgment nor attempt to evaluate the persuasiveness of competing scientific studies. If a party submits admissible expert opinion evidence in opposition to a motion for summary judgment which is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial judge should deny the motion and let the issue be decided at trial. Davis v. Atchison, supra.
Generally at trial, a plaintiff must prove the applicable standard of care through expert medical testimony unless the physician does an obviously careless act from which a lay person can infer negligence. Expert testimony is especially necessary where the defendant in a medical malpractice action has filed a motion for summary judgment supported by expert opinion evidence that the treatment met the applicable standard of care. The opinion of the medical review panel may be considered by the court when ruling on a summary judgment motion. Robertson v. West Carroll Ambulance Service District, supra.
After reviewing the record, we find that this is not so much an issue of whether Mr. Starkey was competent to offer an opinion on causation, but whether such a showing on causation was actually made. Even if we were to accept his opinion, as discussed above, the plaintiffs have failed to show that they could establish causation.

Res Ipsa Loquitur
The plaintiffs urge that the doctrine of res ipsa loquitur applies to this case to show that the hospital was responsible for Mr. Abbott's fall and death. In order to utilize the doctrine of res ipsa loquitur, the plaintiff must establish a foundation of facts on which the doctrine may be applied. The injury must be of the type which does not ordinarily occur in the absence of negligence. In other words, the event must be such that in light of ordinary experience it gives rise to an inference that someone must have been negligent. The plaintiff does not have to eliminate all other possible causes or inferences, but must present evidence which indicates at least a probability that the injury would not have occurred without negligence. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654 (La.1989).
The plaintiffs have failed to show that the doctrine of res ipsa loquitur should apply. The plaintiff was at low risk for falling and had the approval of his physician to be out of bed on occasion. Here, where the plaintiffs have failed to establish a causal link between the nursing care and the harm complained of, they have also failed to show a probability that the injury would not have occurred without negligence. The trial court did not err in declining to apply the doctrine of res ipsa loquitur.

"Falls Care" Plan
In both their own motion for summary judgment and in opposition to the hospital's motion for summary judgment, the plaintiffs argue that the hospital breached the applicable standard of care by failing to formulate and implement a "falls care" plan given the decedent's breathing problems and disorientation. They claim that this breach caused harm. These arguments are without merit.
The plaintiffs cite Cook v. Jefferson Parish Hospital Service District No. 2, supra, for the proposition that the failure of the hospital to have a "falls care" plan constituted a breach of the standard of care, *997 entitling them to recovery. The plaintiffs' reliance on Cook is misplaced. In Cook, a 70-year-old patient was admitted to a hospital after falling at home and breaking her arm. Her doctor ordered that she be placed on bed rest. Because of her age and her history of falling, the court found that the applicable standard of care required that the hospital implement a "falls care" plan for this patient. This was not done and the patient fell again in the hospital, breaking her other arm. The court found the hospital liable. The case does not stand for the proposition that a "falls care" plan is required in every case. In the present matter, the patient was 57 years old, had no history of falling, and, on admission to the hospital, was assessed as being at a low risk for falls. He was ambulatory and had his doctor's permission to get out of bed to go to the bathroom.
The plaintiffs failed to carry their burden of proving on summary judgment that the lack of a "falls care" plan in this case was a breach of the applicable standard of care or that it caused or contributed to the harm complained of. Accordingly, the trial court correctly determined that the lack of a "falls care" plan in this case did not constitute a breach of the standard of care, did not entitle the plaintiffs to summary judgment, and did not defeat the defendant's motion for summary judgment.

CONCLUSION
For the reasons stated above, we find that the record supports the trial court decision granting summary judgment in favor of the defendant, Homer Memorial Hospital, Town of Homer, and its insurer, St. Paul Fire and Marine Insurance Company, and denying the motion for summary judgment of the plaintiffs, Gary Henderson, Jerry Henderson, and Donny Henderson. Costs in this court are assessed to the plaintiffs.
AFFIRMED.
NOTES
[1] At the hearing on the motions for summary judgment, the defendant made an oral motion to strike the "falls care" plan from another facility and the copy of Cook. The motion was denied by the trial court. Even though, in its brief, the hospital urges this court not to consider the "falls care" plan because it was not properly authenticated, the defendant in this case neither appealed that decision nor answered the appeal. Therefore, any objection regarding the document is not properly before this court.