887 So.2d 711 (2004)
Linda Lewis HAWES and Betty Lewis Vickers, Plaintiffs-Appellants,
v.
KILPATRICK FUNERAL HOMES, INC., Defendant-Appellee.
No. 39,089-CA.
Court of Appeal of Louisiana, Second Circuit.
November 17, 2004.
The Smitherman Law Firm, L.C. by Donald Lee Brice, Jr., Shreveport, for Appellant.
Davenport, Files & Kelly, L.L.P. by Lara A. Lane, Monroe, for Appellee W. David Hammett.
Before BROWN, GASKINS and MOORE, JJ.
*712 GASKINS, J.
In this suit claiming fraudulent misrepresentation by a funeral home, the plaintiffs appeal from a judgment granting the defendant's exception of no cause of action or, alternatively, motion for summary judgment. We affirm.

FACTS
In 1985, Loretta Alexander Lewis entered into a "before-need agreement for funeral goods and services" with Kilpatrick's Rose-Neath Funeral Home, Inc. ("Rose-Neath"). She selected the casket and services she desired; the documents indicated that the services would be conducted at the Minden chapel with burial in Minden. Pursuant to this agreement, Mrs. Lewis maintained insurance policies through Kilpatrick Life Insurance of Louisiana in Minden to provide full coverage of her funeral expenses. Under the terms of the agreement, no extra charges would be incurred if the agreed upon services were within 75 miles of any servicing Rose-Neath Funeral Home. However, if outside the 75-mile radius or if there were "services of any funeral home other than Rose-Neath Funeral Home," there could be additional charges.
Mrs. Lewis had two daughters, Linda Lewis Hawes and Betty Lewis Vickers. Two years before her death, Mrs. Lewis gave Mrs. Vickers an envelope containing the agreement and policies. However, Mrs. Vickers never reviewed the contents of the envelope.
Mrs. Lewis died on February 26, 2001. Later that day, Mrs. Vickers went to the *713 Monroe branch of Kilpatrick Funeral Homes, Inc.[1] She met with Jeffrey Garrett, the branch manager. According to her deposition, she gave him the envelope of her mother's documents. She said she told him that her mother had some pre-arranged funeral plans with the Rose-Neath Funeral Home in Minden.[2] She stated that he told her that his funeral home and the Rose-Neath one were "sister companies." Mrs. Vickers insisted that Mr. Garrett never told her that the funeral would be cheaper in Minden at Rose-Neath. She indicated that since her mother was to be buried in Minden, it didn't matter whether the funeral was in Monroe or Minden.
In his deposition, Mr. Garrett testified he reviewed the documents Mrs. Vickers gave him and told her that her mother had a prearranged funeral with Rose-Neath in Minden, and that his funeral home was not affiliated with Rose-Neath. He denied telling her that the companies were "sister companies." Mrs. Vickers told him that it was not convenient to have the funeral in Minden and she wanted it to be held in Monroe. He testified that he asked her three times.
During the meeting between Mrs. Vickers and Mr. Garrett, arrangements were made for Mrs. Lewis' funeral to be held in Monroe with burial in Minden. The total cost of the services was $8,558.98. The daughters assigned their mother's policies with Kilpatrick Life Insurance to Kilpatrick Funeral Homes, Inc. Mr. Garrett informed the daughters that the policies could cover $3,500 of the funeral costs. Thereafter, the daughters paid the remaining balance of $5,058.98.
On February 25, 2002, the daughters filed suit against Kilpatrick Funeral Homes, Inc., claiming fraud. They asserted that they mistakenly believed that the Kilpatrick Funeral Home was affiliated with the Kilpatrick Life Insurance Company.[3] They alleged that after their mother's funeral they learned that her policies would have covered all but $1,000 if the funeral had been arranged through Rose-Neath Funeral Home in Minden. They asserted that the defendant, which was in a position of trust and superior knowledge, took advantage of their grief and inexperience. By being silent and failing to inform the daughters of the true situation, the defendant allegedly caused them to incur unnecessary funeral expenses. The daughters requested damages of $5,058.98, plus attorney fees.
On December 5, 2003, the defendant filed an exception of no cause of action or, alternatively, motion for summary judgment. It asserted that it owed no duty to the daughters to inform them of the availability of a cheaper price for their mother's funeral, and that consequently no cause of action was stated. Alternatively, it contended that the daughters had in their possession all of the necessary information and that all they had to do was read the documents to ascertain the actual facts.
In conjunction with its exception/motion, the defendant attached the following exhibits: the Rose-Neath before-need agreement; the insurance policies, insurance card, and premium payment records; the *714 Kilpatrick Funeral Homes contract for $8,558.98; the daughters' assignment of the insurance policy proceeds to Kilpatrick Funeral Homes; and excerpts from the deposition of Mrs. Vickers, a bank loan officer. She testified that her mother had given her an envelope with the funeral policies two years before her death; however, she did not read the contents. After her mother's death, she took the envelope to the funeral home.
In opposition to the exception/motion, the daughters filed an affidavit by Mrs. Vickers in which she stated that Mr. Garrett represented to her that his funeral home and the Rose-Neath one were "sister companies." Also, she maintained that when she went to the funeral home only hours after her mother's death, she relied upon Mr. Garrett's expertise in determining the coverage available under her mother's pre-need funeral plan. Mrs. Vickers further declared that, had she been told that she was incurring additional and unnecessary expenses by arranging the funeral through Kilpatrick Funeral Home, she would have chosen to use Rose-Neath.
The matter was submitted to the court on briefs. On March 15, 2004, the trial court issued a written ruling in which it granted the defendant's exception/motion.[4] The court found that Mrs. Vickers had in her possession all of the information she needed to make an informed decision before she entered into a contract with the Kilpatrick Funeral Home. It noted that as a loan officer for 32 years, she was not "an unsophisticated lay person."
The daughters appeal.

LAW
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, XXXX-XXXX (La.1/21/04), 864 So.2d 129. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is now favored under our law. La. C.C.P. art. 966(A)(2).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. Art. 966(C)(2).
*715 A trial judge cannot make credibility determinations on a motion for summary judgment. Hutchinson v. Knights of Columbus, Council No. 5747, XXXX-XXXX (La.2/20/04), 866 So.2d 228.
A contract is formed by the consent of the parties. La. C.C. art. 1927. However, consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. C.C. art. 1953.
Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations. La. C.C. art. 1954. In pleading fraud, the circumstances constituting fraud must be alleged with particularity. La. C.C.P. art. 856. However, fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957.

DISCUSSION
The movant, Kilpatrick Funeral Home, has the burden of proof. La. C.C.P. art. 966(C)(2). However, because it will not bear the burden of proof at trial, its burden does not require it to negate all essential elements of the daughters' fraud suit, but rather to point out to the court that there is an absence of factual support for one or more elements essential to their action. If the funeral home meets this initial burden of proof, the burden shifts to the daughters to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden at trial. If the daughters fail to meet this burden, there is no genuine issue of material fact, and the funeral home is entitled to summary judgment. La. C.C.P. art. 966. See Goins v. Wal-Mart Stores, Inc., XXXX-XXXX (La.11/28/01), 800 So.2d 783.
As previously mentioned, credibility determinations are inappropriate in deciding a motion for summary judgment. However, even if we accept the daughters' allegations as true, we are still obliged to conclude that a finding of fraud is insupportable.
The daughters argue that the defendant funeral home was in a relation of confidence, which under La. C.C. art. 1954 would allow a finding of fraud even though the truth could have been easily ascertained. No evidence supports this position. The mere fact that Mr. Garrett possessed more expertise regarding the funeral home industry did not create a relationship of trust between the parties. Nothing that transpired at the meeting between Mr. Garrett and Mrs. Vickers created such a relationship.
Review of the documents in the envelope Mrs. Lewis gave to her daughter reveal that they are straightforward and simply worded. Had the daughters read these documents, they would have been aware of the terms of their mother's contract. Mrs. Vickers, an experienced loan officer, signed a clearly written contract with Kilpatrick Funeral Home which plainly set forth a price that was higher than the one in her mother's contract. Had she chosen to read the contract her mother signed with Rose-Neath, she would have been able to discern that the contract she was signing at Kilpatrick Funeral Home contained significantly higher prices and included items not contained in her mother's contract. Even if Mr. Garrett had told her that Kilpatrick Funeral Home and Rose-Neath were "sister companies," Mrs. Vickers *716 had at her disposal all of the information required to ascertain the truth.
There is no duty that a funeral home advise family members that their deceased relative's prepaid funeral services contract would provide more services at the contractually specified funeral home rather than at a non-specified funeral home. Although the period immediately following a relative's death is obviously an emotional time, fraud will not arise under circumstances such as those set forth by the daughters. The sale of prepaid funeral services is regulated under the law; see La. R.S. 37:861. If the legislature wished to impose an affirmative duty upon funeral homes to make such disclosures, it could do so. However, the legislature has not chosen to statutorily impose such a duty.
Here, the daughters' allegations that the funeral home director stated that Kilpatrick Funeral Home was a "sister company" to Rose-Neath, without more, does not rise to the level of fraud. The daughters failed to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proving their allegations of fraud at trial. Accordingly, summary judgment in favor of the defendant funeral home was properly ordered.

CONCLUSION
The judgment of the trial court granting the motion for summary judgment is affirmed. Costs are assessed against the appellants, Linda Lewis Hawes and Betty Lewis Vickers.
AFFIRMED.
BROWN, C.J., dissents with written reasons.
BROWN, C.J., Dissenting.
Kilpatrick's Funeral Home and Kilpatrick's Rose-Neath Funeral Home are competitors in North Louisiana rather than related companies. Plaintiff claims that she was told by the director of Kilpatrick's Funeral Home that it was a "sister company" with Kilpatrick's Rose-Neath and thus the terms of the contract with Rose-Neath would apply. The director denies that he made such a statement. This is a credibility issue material to a resolution of this case. Summary judgment is not appropriate.
NOTES
[1] The record indicates that Kilpatrick Funeral Homes has branches in Monroe, West Monroe, Bernice, Ruston, and Farmerville.
[2] According to Mrs. Vickers, her mother lived in Monroe for the last nine years of her life; before that, she lived in Minden.
[3] Although the owners of Kilpatrick Funeral Homes, Inc., and Kilpatrick's Rose-Neath Funeral Homes and Cemeteries, Inc., are apparently related, the companies are separate. However, Kilpatrick Life Insurance Company is affiliated with Rose-Neath.
[4] In its opinion, the trial court referred to Mr. Garrett's deposition. This document was not included in the original appellate record. However, the plaintiffs moved to supplement the record with the depositions of Mr. Garrett and Mrs. Vickers. Counsel for the defendant did not oppose the motion. Accordingly, this court ordered the appellate record to be supplemented with these exhibits.