I .PEATROSS, J.
Petitioners, Joann Lewis and Lucy Sikes (“Petitioners”), seek review of the trial court’s granting of Defendants’ motion for partial summary judgment finding that the damages suffered after November 10, 1999, by Joann Lewis were unrelated to the conduct of Defendants. For the reasons set forth herein, the partial summary judgment is affirmed.

FACTS

On September 19, 2003, Joann Lewis and the bankruptcy trustee of her estate, Lucy Sikes, filed suit against Dr. John E. Hull, M.D. and his employer, The Arthritis Clinic & Lab, Inc. (“The Arthritis Clinic”). The petition alleged that Ms. Lewis was treated by Dr. Hull on November 10, 1999, and that, during her visit, she was administered the medication Toradol. After receiving the medication, Ms. Lewis allegedly suffered an allergic reaction. The petition alleges that Ms. Lewis’ allergy to Toradol should have been known by Dr. Hull because she had previously suffered a similar reaction when he had administered the medication. Accordingly, Petitioners seek to have Dr. Hull and the Arthritis Clinic held liable for the damages suffered by Ms. Lewis for Dr. Hull’s breach of the standard of care.
Prior to filing the lawsuit, Ms. Lewis’ claim was submitted to a medical review panel. The panel reviewing her claim consisted of four members: Larry Arbour, as the attorney-chairman; Robert Wolf, M.D.; Robert E. Goodman, M.D.; and Thomas A. Pressly, M.D. The panel rendered its opinion on June 23, 2003. Two of the physician panel members, Drs. Pressly and Goodman, concluded that the evidence did not ^support the conclusion that Dr. Hull breached the applicable standard of care in his treatment of Joann Lewis.
In their reasons, the panel members found that the history preceding Ms. Lewis’ November 10, 1999 visit would not have created any certainty as to Toradol being the source of her previous allergic reactions. Ms. Lewis had been administered the medication on two prior occasions by Dr. Hull — first in September 1998 and again in November 1998. The first time she was administered the injection, Ms. Lewis reported no adverse reaction. The second time, she returned to Dr. Hull’s office shortly after the injection complaining of a raspy voice, itching and a generalized urticarial rash. The panel noted, however, that, during the November 1998 *799 visit, Ms. Lewis was also administered a Celestone injection. Additionally, the panel noted that the patient had recently been prescribed Darvocet and was taking other non-steroidal anti-inflammatory drugs. The panel concluded that, as a result of these other medications Ms. Lewis was taking, the etiological factor or factors giving rise to her allergic reaction would have been uncertain and Dr. Hull’s administration of Toradol on November 10, 1999, would have been within the standard of care.
The third member of the panel, Dr. Wolf, dissented from the panel’s conclusion on the basis that the severity of Ms. Lewis’ allergic reaction following her November 23, 1998 visit should have put Dr. Hull on notice not to administer any of the possible offending medications until the specific cause of the reaction was determined. Dr. Wolf noted, however, that the only injury sustained by Ms. Lewis following the November 10,1,4999 injection of Toradol was a urticarial rash and a cough which were treated that same day and from which Ms. Lewis “recovered uneventfully.” He further noted his belief that Ms. Lewis’ hospitalization on November 14 and 15, 1999, and her symptoms and complaints thereafter were unrelated to the Toradol injection. In paragraph 2 of his dissenting remarks, Dr. Wolf states:
The only damage/injury sustained by Ms. Lewis as a result of the administration of Toradol on November 10, 1999, was an urticarial reaction and cough as described in Dr. Hull’s addendum in his note of November 10, 1999. It is my opinion that the patient’s hospitalization at North Monroe Hospital on November 14th and 15th of 1999 was not related to the administration of the Toradol on November 10, 1999. It is my further opinion that any symptoms/complaints or medical treatment of Ms. Lewis subsequent to November 14th and 15th are not related to the administration of the Toradol on November 10,1999.
On March 19, 2004, Dr. Hull and The Arthritis Clinic filed a motion for partial summary judgment seeking dismissal of any claims for damages suffered after November 10, 1999, and limiting Ms. Lewis’ recovery of damages to any physical and/or mental pain and suffering that occurred on November 10, 1999. Attached to their motion for partial summary judgment was a copy of the opinion of the medical review panel identified via an affidavit executed by the attorney-chairman, Mr. Arbour. Also attached to the motion was a copy of Ms. Lewis’ responses to interrogatories wherein she identified the dissenting panel member, Dr. Robert Wolf, as the only expert whom she expected to call as an expert witness at trial. While Ms. Lewis reserved the right to supplement that response, there is no evidence in the record that any additional experts have ever been named.
|4In opposing the motion for partial summary judgment, Petitioners submitted a copy of the manufacturer’s product information pamphlet on Toradol along with Defendants’ admission that it was, in fact, an authentic copy of same. While the pamphlet lists the litany of potential side effects to Toradol, there are no specifics regarding the delay in onset, progression and duration of the side effects. In their very brief memorandum in opposition, however, Petitioners conclusively allege that many of the symptoms and side effects of Toradol listed in the product information would persist well beyond the date of ingestion. Also attached to the opposition was the affidavit of Ms. Lewis in which she attested to the following:
1. That she is the plaintiff in the proceeding styled “JOANN LEWIS, LUCY G. SYKES, BAKRUPTCY [sic ] *800 TRUSTEE FOR THE ESTATE OF JOANN LEWIS VERSUS NO. 03-4122 JOHN E. HULL, AND THE ARTHRITIS CLINIC AND LAB, INC.”
2. After she was administered Tora-dol by Dr. Hull on November 10, 1999, she developed hives/urticartia [sic] of the eyes, face and throat.
3. She experienced constriction of airways, gasping for air, and severe wheezing.
4. She experienced involuntary jerking and pain.
5. Furthermore, her weakness, shortness of breath and chest pains worsened daily from November 10, 1999, until she finally went to the hospital on November 14,1999.
6. The above described symptoms which required hospitalization, were continuous, progressive and were caused by the administration of Toradol by Dr. Hull on November 10,1999.
The motion for partial summary judgment was heard on May 18, 2004. The parties declined to have the hearing recorded. At the conclusion | Bof the hearing, the trial court granted Defendants’ motion and, on June 3, 2004, the trial court signed a judgment granting partial summary judgment dismissing Petitioners’ claims for damages “persisting after November 10,1999.” This appeal ensued.
After concluding that the trial court’s designation of the judgment as final was inadequate under the requirements of La. C.C.P. art. 1915(B), this court remanded the matter for a determination of whether there was “no just reason for delay” which would justify certification of the judgment as final and appealable. After receiving the trial court’s response, this court determined that the certification was proper and the appeal would be allowed to proceed.

DISCUSSION

We consider Petitioners’ allegation on appeal that the trial court erred in granting summary judgment in favor of Defendants because genuine issues of material fact were created by the evidence submitted by them in opposition to the motion. In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Ocean Energy, Inc. v. Plaquemines Parish Gov’t, 04-0066 (La.7/6/04), 880 So.2d 1.
Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary | (¡judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of every action. La. C.C.P. art. 966(A)(2); Hawes v. Kilpatrick Funeral Homes, Inc., 39,089 (La.App.2d Cir.11/17/04), 887 So.2d 711. Summary judgment may be rendered to dispose of a particular issue, theory of recovery, cause of action or defense in favor of one or more parties, even though the granting of same does not dispose of the entire case. La. C.C.P. art. 966(E).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for *801 one or more elements essential to the adverse party’s claim, action or defense. Thereafter, the adverse party must produce evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Hawes, supra.
Moreover, when a motion for summary judgment is made and supported as provided by law, an adverse party may not rest on the mere allegations or denials of his pleading. His response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there |7is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be rendered against him. La. C.C.P. art. 967.
In support of their motion for summary judgment, Defendants submitted the opinion of the medical review panel (finding that Dr. Hull did not breach the applicable standard of care), along with the affidavit of Mr. Arbour, identifying it as a true, correct and complete copy of the opinion. The medical review panel’s findings may be considered in evaluating a summary judgment, as the panel’s members are physicians actively working in their fields of expertise and the findings are based on the experts’ personal knowledge gained through experience. Hinson v. Glen Oak Retirement Home, 34,281 (La.App.2d Cir.12/15/00), 774 So.2d 1134.
We do not believe this principle to be any less applicable in the present case simply because the opinion being relied upon is only attributable to one of the panel members. Petitioners correctly noted in opposing the motion that the remaining panel members did not opine that Ms. Lewis’ reaction to the Toradol could not have extended beyond November 10, 2004. It is apparent, however, that that was because the remaining panel members offered no opinion either way on the actual or potential duration of her symptoms resulting from Toradol. They simply never reached the issue on the basis of their finding that Dr. Hull did not breach the standard of care in administering the To-radol. While contradicting opinions in the panel’s findings might evidence a genuine laissue of fact precluding summary judgment, no such contradictions are present here.
Accordingly, Defendants’ motion for summary judgment was properly supported by Dr. Wolfs opinion that the symptoms and complications suffered by Ms. Lewis after November 10, 1999, and which she claims led to her November 14, 1999 hospitalization, were unrelated to the administration of Toradol by Dr. Hull. The fact that Petitioners were unable to identify any expert other than Dr. Wolf to testify on their behalf further evidences the absence of a genuine issue of material fact. The burden then shifted to Petitioners to set forth specific facts showing that there was a genuine issue of material fact precluding summary judgment.
To defeat the motion for summary judgment, Petitioners offered the manufacturer’s product information pamphlet on To-radol and Ms. Lewis’ affidavit attesting to the symptoms she suffered in the days following her November 10, 1999 injection of Toradol. On appeal, Petitioners argue that the product information clearly states that the “hypersensitivity reactions” to the drug range from bronchospasm to anaphy-lactic shock and that the symptoms described by Ms. Lewis in her affidavit clearly fall within the range of side effects described by the pamphlet as having been identified in clinical trials and reported after marketing of the drug.
*802 While there does appear to be some commonality between the drug’s known side-effects and the symptoms suffered by Ms. Lewis, nothing in the pamphlet supports the position that such hypersensitivity reactions could progress over a period of five days. While this court cannot conclude that l9the allergic reactions like those experienced by Ms. Lewis would not last or progress over the period of time which she has alleged, nor can it conclude that they would — hence, the necessity for a plaintiff in a medical malpractice suit to present expert testimony to establish a causal connection between the conduct complained of and the damages allegedly suffered. Petitioners presented no such evidence.
While expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim, because of the complex medical and factual issues involved in most cases, a plaintiff will likely fail to sustain his burden of proving his claim without medical experts. Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228. This is one of those cases. The causal nexus between an injection of Toradol and the injuries alleged by Ms. Lewis is not something which a lay person could determine from the mere testimony of Ms. Lewis and the product information pamphlet issued by the manufacturer of a drug. Accordingly, Petitioners should have come forward with expert testimony to support the allegation that the allegedly negligent administration of Toradol was the cause of Ms. Lewis’ post November 10, 1999 complications and subsequent hospitalization. Their failure to do so prevented them from showing that they will be able to satisfy their evidentiary burden of proof at trial. We conclude, therefore, that Defendants’ motion for partial summary judgment was properly granted.
| ^CONCLUSION
For the foregoing reasons, the partial summary judgment of the trial court is affirmed. Costs of this appeal are assessed to Petitioners, Joann Lewis and Lucy G. Sikes.
AFFIRMED.