WILLIAMS, Judge.
hThe plaintiffs, William K. Hays and Juanita Louise Hays, appeal a summary judgment rendered in favor of defendants, Christus Schumpert Northern Louisiana d/b/a Christus Schumpert Health System (“Schumpert”) and Deirdre Y. Barfield, M.D. (“Dr. Barfield”). For the following reasons, we reverse and remand for further proceedings.
FACTS
On June 14, 1999, Juanita Hays was admitted to Schumpert by her treating physician, Dr. Barfield, with complaints of continued nausea, vomiting, diarrhea, abnormal weight loss and weakness. Ms. Hays had been experiencing these symptoms for several months. During her hospital stay, Ms. Hays suffered a stroke forcing her to remain at Schumpert until July 12, 1999, when she was transferred to a rehabilitation facility.
As a result of the treatment she received by her various healthcare providers during the episode, Ms. Hays filed a medical malpractice complaint with the Louisiana Division of Administration, Patient’s Compensation Fund, which convened a medical review panel. In November 2002, the panel rendered its opinion concluding that the evidence did not show that any of *545 the healthcare providers failed to meet the applicable standard of care and that Ms. Hays’ alleged damages were not caused by their conduct.
According to the medical review panél findings, Ms. Hays was admitted to Schumpert on June 14, 1999, for testing to determine the etiology of the symptoms she had suffered over the previous months. Among the initial battery of tests, Ms. Hays’ glucose level was measured. It | ¡¡is undisputed that on the evening of June 14, 1999, an incorrect test result was reported to Dr. Barfield indicating an elevated glucose level. As a result, Dr. Barfield instituted orders for sliding scale insulin and adjustment of Ms. Hays’ IV fluids. The following morning, Dr. Barfield wa,s provided with the correct laboratory results showing that Ms. Hays’ glucose level had in fact been low. The panel found that there was no documentation that Ms. Hays was ever administered the insulin ordered by Dr. Barfield.
On the afternoon of June 15, 1999, Ms. Hays became less responsive and hypotoxic, leading to her transfer to the intensive care unit the following day. She was diagnosed with a probable venous thrombus in her left femoral vein and a pulmonary embolus causing her oxygenation problems. However, it was not until June 19, 1999, that her chest x-ray began to show bilateral infiltrates consistent with possible pneumonia. On that date she was started on an antibiotic and Ativan was prescribed for agitation. To relieve her agitation and confusion, Ms. Hays was returned to a hospital floor room on June 20, 1999, and soft restraints were ordered as needed. Additionally, the panel found that Dr. Bar-field suggested to Ms. Hays’ family that she be supervised or restrained at all times.
On the evening of June 20, 1999, after her husband, William Hays, left the hospital to return home, a respiratory therapist found. Ms. Hays alone in her room, sitting in a chair. Ms. Hays’ breathing was shallow and her central line had been pulled out of her chest. A code was called and Ms. Hays was successfully resuscitated, intubated and returned to intensive care. An MRI taken on July 6, 1999, indicated that Ms. Hays had suffered a | astroke. On July 12,1999, Ms. Hays was transferred to Dubuis Hospital for Continuing Care for rehabilitation purposes. Her condition slowly improved and she eventually recovered significantly from her stroke and respiratory problems.
Based on these findings, the panel concluded that none of Ms. Hays’ health problems were caused by the care she received from any of her healthcare.providers, including Schumpert and Dr. Barfield. While the panel acknowledged a factual dispute as to whether Ms. Hays was to be supervised or restrained at all times, the panel stated that fact was irrelevant to Ms. Hays’ “ultimate problems” and that no causation had been shown. Likewise, the panel concluded no injury resulted from “the error in the lab work given to Dr. Barfield.”
Subsequently, the plaintiffs, Ms. Hays and her husband, William K. Hays, filed a petition for damages against the defendants, Schumpert and Dr. Barfield. The petition alleged that Schumpert personnel negligently reported erroneous lab work to Dr. Barfield on June 14, 1999, resulting in the improper administration of sliding scale insulin. Additionally, the plaintiffs alleged that defendants failed to properly monitor and restrain Ms. Hays on the evening of June 20,1999.
In October 2005, Schumpert filed a motion for summary judgment on the basis of the medical review panel’s conclusion that its conduct had neither violated the applicable standard of care nor caused any of *546 plaintiffs’ alleged damages. • Schumpert also relied on the deposition testimony of plaintiffs’ expert, Dr. Murray Pizette, who stated that he did not have any |4criticism of the medical care rendered by Schum-pert personnel and that he agreed with the medical review panel’s opinion to the extent that it found no breach of the applicable standard of care by Schumpert.
Tn opposing the motion for summary judgment, plaintiffs relied on Ms. Hays’ medical records, affidavits from Dr. Piz-ette and Walter J. Pierron, a licensed pharmacist in Louisiana, and excerpts from the depositions of Dr. Barfield, Dr. Pizette, and William Hays. The medical records indicate that on the evening of June 14, 1999, Ms. Hays’ blood glucose level was 57 mg/dL, which is below the “LO REFERENCE” level of 80 mg/dL indicated on the blood chemistry report. The progress notes for June 15, 1999 include the following notation by Dr. Bar-field:
Addendum: Incorrect lab called to me last pm-was basis for choice of IVF (and) insulin sliding scale. Correct lab seen (and) appropriate changes made. No adverse effects to pt noted, but did delay treatment.
The medical records do not indicate what lab value was reported to Dr. Barfield, but the order for sliding scale insulin suggests it was an elevated level and not the 57 mg/dL indicated on the blood chemistry report. While the medical records do not affirmatively show that any insulin was ever administered, they indicate that Ms. Hays’ blood glucose level was measured twice on the morning of June 15, 1999. The first reading was a critically low 34 mg/dL, and the second was even lower at 32 mg/dL.
In his affidavit, Walter Pierron stated that he was a registered pharmacist with over 50 years’ experience and was familiar with the administration, effects and side effects of insulin. Based on his review of Ms. Hays’ medical records, Pierron opined that it was more probable than Rnot that Ms. Hays was given insulin at some point during the night of June 14, 1999, or the early morning hours of June 15, 1999, and that her dangerously low blood sugar levels were a result thereof.
Dr. Pizette stated in his affidavit that since the time of his deposition, he had reviewed additional information in the form of Walter Pierron’s affidavit. Based upon that information, Dr. Pizette opined that the standard of care had been breached by Schumpert when the incorrect lab values were reported to Dr. Barfield. Furthermore, he opined that if this breach resulted in the administration of insulin, the dangerously low blood levels that followed would have been a result thereof and a contributing factor in Ms. Hays’ injuries.
At the hearing on the motion for summary judgment, the parties submitted the matter without argument. Finding that Dr. Pizette’s affidavit, “based on the affidavit of a pharmacist,” was not sufficient to create a genuine issue of material fact, the district court rendered judgment granting Schumpert’s motion for summary judgment. Plaintiffs appeal the judgment.
DISCUSSION
The plaintiffs contend the district court erred in granting the motion for summary judgment. Plaintiffs argue that the expert witness affidavits demonstrated a genuine issue of material fact as to whether Schumpert personnel negligently gave insulin to Ms. Hays as a result of the incorrect report of lab results.
In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, *547 employing the same |ficriteria that govern the trial court’s determination of whether summary judgment is appropriate. Ocean Energy, Inc. v. Plaquemines Parish Gov’t, 04-0066 (La.7/6/04), 880 So.2d 1. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Hawes v. Kilpatrick Funeral Homes, Inc., 39,089 (La.App. 2d Cir.11/17/04), 887 So.2d 711. Summary judgment may be rendered to dispose of a particular issue, theory of recovery, cause of action or defense, even though the granting of same does not dispose of the entire case. LSA-C.C.P. art. 966(E).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter before the court, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense. Thereafter, the adverse party must produce evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. LSA-C.C.P. art. 966(C)(2); Hawes, supra.
[7In a medical malpractice action, the plaintiff must prove the applicable standard of care, the breach of this standard of care, and the causal connection between the breach and the resulting injury. LSA-R.S. 9:2794(A); Britt v. Taylor, 37,378 (La.App. 2d Cir.8/20/03), 852 So.2d 1128; Orea v. Brannan, 30,628 (La.App. 2d Cir.6/24/98), 715 So.2d 108. Generally at trial, a plaintiff must prove the applicable standard of care through expert medical testimony unless, “the physician does an obviously careless act ... from which a lay person can infer negligence.” Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228 at 1233; Strange v. Shroff, 37,353 (La.App. 2d Cir.7/16/03), 850 So.2d 1077.
Expert opinion testimony in the form of an affidavit or a deposition may be considered in support of or opposition to a motion for summary judgment. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. A party cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous deposition testimony. Henderson v. Homer Memorial Hospital, 40,585 (La.App. 2d Cir.1/27/06), 920 So.2d 988, writ denied, 06-0491 (La.5/5/06), 927 So.2d 316.
In support of its motion for summary judgment, Schumpert submitted the medical review panel’s opinion that the hospital did not breach the applicable standard of care, along with the deposition testimony of Dr. Pizette generally agreeing with that conclusion. However, the undisputed facts show that on the evening of June 14, 1999, Dr. Barfield was given an erroneous blood glucose level over the phone by Schumpert personnel. The | ¡^purpose of the blood tests was to inform the physician of the patient’s medical status so that the appropriate decisions regarding the patient’s care could be made. It is also undisputed that in response to this report, at approximately 8:30 p.m., Dr. Barfield ordered that sliding scale insulin be administered to Ms. *548 Hays. The medical records indicate that the next morning at 4:20 a.m., Ms. Hays’ blood glucose level had dropped to a dangerously low 34 mg/dL. A nurse’s note indicated that at 10:20 a.m., Ms. Hays’ blood sugar level was 32 mg/dL, which Dr. Barfield acknowledged would have put Ms. Hays at risk of significant hypoglycemic symptoms. That morning, Dr. Barfield noted in the patient’s chart that she had seen the correct lab values and made the appropriate changes. Dr. Barfield further noted that although the erroneous report had no adverse effects on Ms. Hays, the error did delay her treatment.
The record establishes that Ms. Hays suffered from a low blood glucose level on the evening of June 14, 1999. Dr. Bar-field, however, acting upon incorrect information concerning Ms. Hays’ blood glucose level, ordered the administration of insulin, a hormone commonly known to decrease blood glucose levels. Whether the hormone was actually administered is not evident from the record before us. Nevertheless, by the following morning Ms. Hays’ blood glucose level had dropped into “dangerously low” territory. Dr. Pizette opined in his affidavit that such a dangerously low blood glucose level would have contributed to Ms. Hays’ injuries. Thus, the testimony contained in the record demonstrates there is a genuine issue of material fact as to whether the misreporting of Ms. Hays’ Lblood chemistry lab results was a breach of the standard of care.
The reason for the medical review panel’s ultimate conclusion that Schumpert did not breach the standard of care seems to be the belief that insulin was not administered to Ms. Hays as a consequence of the erroneous lab results. Specifically, the panel noted in its opinion that there was no documentation that Ms. Hays had received any insulin. That being the case, it is reasonable to conclude that the panel saw no causal connection between the erroneous lab results and the complications subsequently suffered by Ms. Hays. Along the same line of reasoning, however, it is also fair to assume that the panel did not reach the issue of whether insulin, if administered, could have caused any of the complications subsequently suffered by Ms. Hays.
On this question, plaintiffs presented the affidavit of Dr. Pizette, who stated that the administration of insulin to Ms. Hays would have caused her to experience dangerously low blood sugar levels, which would have contributed to her injuries. Accordingly, in the present case, summary judgment would only be appropriate if there was no genuine issue of fact as to whether any insulin was actually administered to Ms. Hays on the evening of June 14, 1999, or in the early morning hours of June 15, 1999.
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Knowles v. McCright’s Pharmacy, Inc., 34,559 (La.App. 2d Cir.4/4/01), 785 So.2d 101. The inferences to be |indrawn from the facts described above raise a genuine question of material fact which should have precluded summary judgment.
While one could infer that Ms. Hays was not given insulin and that her blood glucose level dropped regardless of the delay in treatment, that is neither the sole nor most likely inference to be drawn. The inference most favorable to the plaintiffs, and the more reasonable one under all of the known circumstances, is that the overnight drop in Ms. Hays’ blood glucose level was caused by either the unrecorded administration of insulin or the delay in treatment caused by the erroneous report *549 of her lab results. If Ms. Hays’ blood glucose level was low and dropping on the evening of June 14, 1999, then the erroneous lab report to Dr. Barfield delayed her from ordering the treatment needed to reverse the condition until the following morning, when Ms. Hays’ blood glucose had reached a dangerously low level. Dr. Pizette’s affidavit to the effect that this dangerously low level could have contributed to Ms. Hays’ injuries makes this a genuine issue of material fact. Because the factual inferences reasonably drawn from the circumstantial evidence presented by the plaintiffs are to be construed in the plaintiffs’ favor at this juncture of the proceedings, summary judgment should not have been granted.
We are unpersuaded by Schumpert’s argument that Dr. Pizette’s affidavit should have been disregarded as being in conflict with his earlier deposition testimony. Schumpert presented deposition excerpts of general statements made by Dr. Pizette that he did not believe the conduct of Schumpert personnel had been a factor in causing Ms. Hays’ damages. InWhile Schumpert interprets Dr. Piz-ette’s statements as an acknowledgment that no insulin was administered and the delay in treatment had no effect, the statements could also reflect his belief that Dr. Barfield should have confirmed the blood glucose levels in person before ordering sliding scale insulin and sooner than the following morning. Given the limited nature of the testimony presented by the parties, we cannot know the basis for Dr. Pizette’s opinion.
The deposition testimony submitted to the district court does not reflect any affirmative assertions by Dr. Pizette that a dangerously low blood sugar level could not have contributed to Ms. Hays’ injuries or that Schumpert’s conduct could not have played a part in that dangerously low blood sugar level. Contrary to Schum-pert’s assertion in its brief, the deposition excerpts do not show that Dr. Pizette concluded that Ms. Hays never received insulin. Rather, Dr. Pizette stated that he did not find a reference to an insulin injection in Ms. Hays’ medical chart. Additionally, in the deposition excerpts, Dr. Pizette was not asked whether Ms. Hays’ declining glucose levels on June 15, 1999 were consistent with the administration of insulin, as addressed in his affidavit. Thus, we do not find that Dr. Pizette’s affidavit directly contradicts his prior deposition testimony.
In its brief, Schumpert also contends that Dr. Pizette’s affidavit could not rely on Pierron’s affidavit because plaintiffs did not list Pierron as a witness or provide Schumpert with his report at least 90 days before the trial date, as set forth in LSA-C.C.P. art. 1425. Although Dr. Pizette in his | ^affidavit referred to Pierron’s affidavit with regard to the effects of insulin on Ms. Hays’ blood glucose levels, Dr. Pizette also stated that he possessed personal knowledge of the treatment of patients with insulin. As a consequence, Dr. Piz-ette was qualified, independent of Pier-ron’s affidavit, to offer an opinion as to whether Ms. Hays’ condition on June 15, 1999 was consistent with receiving an injection of insulin. We have not relied on Pierron’s affidavit in this discussion and do not comment on the plaintiffs’ possible use of his testimony in any future proceedings in this case.
After reviewing the record, we conclude that summary judgment was inappropriate because a genuine issue of material fact existed as to whether the initial reporting of the erroneous lab results by Schumpert personnel contributed to Ms. Hays’ injuries. In reaching this conclusion, we need not address the issue of whether a genuine issue of fact existed as to the allegation of *550 improper monitoring or restraining of the patient by Schumpert.
CONCLUSION
For the foregoing reasons, the summary judgment rendered in favor of Christus Schumpert Northern Louisiana d/b/a Christus Schumpert Health System is hereby reversed, and the matter is remanded for further proceedings. Costs of this appeal are assessed to the appellee.
REVERSED AND REMANDED.