833 So.2d 548 (2002)
Olla THOMAS, et al.
v.
SOUTHWEST LOUISIANA HOSPITAL ASSOCIATION d/b/a Lake Charles Memorial Hospital.
No. 02-0645.
Court of Appeal of Louisiana, Third Circuit.
December 11, 2002.
Rehearing Denied January 15, 2003.
*549 Todd A. Townsley, The Townsley Law Firm, Lake Charles, LA, for Plaintiffs/Appellees, Olla Thomas.
Benjamin Joseph Guilbeau, Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P., Lake Charles, LA, for Defendant/Appellant, Lake Charles Memorial Hospital, Southwest Louisiana Hospital Association.
Court composed of NED E. DOUCET, JR., Chief Judge, MICHAEL G. SULLIVAN, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
Both the plaintiff, Betty Latigue, and the defendant, Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital (Memorial Hospital), appeal the judgment of the trial court in this medical malpractice matter. For the following reasons, we reverse.

FACTS
On August 29, 1996, the plaintiff, Olla Thomas, filed suit against Memorial Hospital under the Louisiana Medical Malpractice Act due to a fall she suffered from a hospital bed. Although she originally sought a trial by jury, she later requested a bench trial due to the fact that the damages in this matter did not meet the jurisdictional requirements for a trial by jury.
On July 23, 1993, Thomas fell at home, suffering a laceration to her forehead. After being treated in the emergency room, she was admitted to the hospital for observation. The admit note states that she was suffering from Alzheimer's Disease and syncope or dizziness. While she was in the hospital, Thomas' fifteen-year-old grandniece, Stephanie Thomas, stayed in the room with her.
On July 26, 1993, at 3:30 a.m., Thomas was found on the floor by her bed by a nurse's aide, with the two bottom bed rails down. The nurse's notes account the events leading up to Thomas' fall. At 4:00 p.m., July 25, 1993, Kendall Leadbetter, now Mattinson, reported that Thomas answered her questions appropriately, but was disoriented to time, person, and place. She noted that a family member was present and encouraged both of them to use the call button for assistance. The flow record indicates that all four bed rails were up at this time. At 10:00 p.m., Mattinson noted that her assessment of Thomas was unchanged. At 12:00 a.m., she noted that Thomas' doctor was on his rounds, and that new orders were received. At 3:00 a.m., she noted that Thomas was asleep. At 3:35 a.m., she notes that Thomas was found on the floor by the nurse's aide. "No c/o pain discomfort, bearing wt well. Granddaughter present in room. States that she did not hear grandmother fall. Bottom 2 rails down on bed. When questioned granddaughter stated she had put them down earlier." An incident report prepared contemporaneously with the incident echos these remarks.
An assessment performed on Thomas by Mattinson revealed no serious injury, her doctor was not informed of the fall until *550 7:00 a.m. that morning. X-rays later revealed that Thomas had suffered a displaced subcapital fracture of the left femoral head. Surgery was performed by Dr. Dale Bernauer, which entailed the placement of a prosthesis on Thomas' left hip. She fell out of bed a second time while in the hospital, but suffered no further injury. A third fall at home, after her discharge, required further surgery on her left hip.
This matter was initially submitted to a Medical Review Panel. On June 3, 1996, the panel found that the evidence presented failed to support Thomas' claim that Memorial Hospital failed to comply with the appropriate standard of care. The written reasons submitted by the panel state:
The evidence presented, in the form of hospital records and nurses notes (which were appropriate and thorough) strongly indicate that proper treatment was being rendered to the patient, and more specifically, that the hospital staff had been consistent in keeping the bed rails up to prevent injury to the patient. Literally every shift on the "Nursing Flow Records" from the date of admission on June 23, 1996(sic), up to thirty minutes before the incident in question on the morning of June 26, 1996(sic), and afterwards, indicates that the side rails were checked and were up in either the times two or the times four position. Our opinion is based on the actual records presented for review as opposed to any post-incident recollections by the parties involved, although some concern arises from the fact that the relative of the patient who slept in the hospital room every night apparently was not following nurses instructions as to the patient's restraints even several days after the incident according to the nurses notes of July 2, 1993.
Thomas died on January 18, 1998. On November 8, 1998, an order was granted by the trial court substituting Latigue as the plaintiff in this matter. During the bench trial, evidence was submitted by Latigue that Stephanie did not put the bed rails down and that she never told Mattinson that she did so. Following the close of evidence, the trial court rendered judgment finding Memorial Hospital twenty percent at fault in causing Thomas' fall and Stephanie eighty percent at fault in causing her fall. Following the bench trial, the trial court awarded Thomas general damages in the amount of $200,000, but reduced that amount by the eighty percent fault attributed to Stephanie, for an award of $40,000. In a February 20, 2002 amended judgment, the trial court held that the total possible award recoverable by Thomas was $50,000, due to her stipulation that the damages in this matter did not meet the jurisdictional limits provided by La.Code Civ.P. art. 1732(A)(1). Accordingly, the trial court reduced the $50,000 award by the eighty percent fault attributable to Stephanie, which resulted in an award of $10,000 against Memorial Hospital. Appeals by both Latigue and Memorial Hospital followed.

ISSUES
Memorial Hospital raises one assignment of error on appeal. It argues that the trial court erred in finding that it breached the standard of care due Thomas when there was no testimony supporting that breach.
Latigue raises four assignments of error on appeal. She argues that the trial court erred in finding Memorial Hospital only twenty percent at fault, while finding Stephanie eighty percent at fault. She also argues that the trial court erred in amending the judgment to apportion the eighty percent fault attributed to Stephanie *551 on the stipulated recoverable amount of $50,000, instead of the $200,000 it originally awarded Thomas. Finally, Latigue argues that the trial court erred in assessing Thomas with eighty percent of the court costs.

LAW
In Odom v. State ex rel. Department of Health and Hospitals, 98-1590, pp. 7-8 (La.App. 3 Cir. 3/24/99), 733 So.2d 91, 96-97, this court discussed the law pertaining to medical malpractice:
In a medical malpractice action alleging the negligence of a hospital, the plaintiff carries the burden of proving, as in any negligence action, that "the defendant owed the plaintiff a duty to protect against the risk involved, that the defendant breached that duty, that the plaintiff suffered an injury, and that the defendant's actions were a substantial cause in fact of the injury." Smith v. State Through Dep't HHR., 523 So.2d 815, 819 (La.1988).
Furthermore, it is well settled that a hospital may also be liable for the negligent acts committed by its employees, including nurses, pursuant to the doctrine of respondeat superior. Lopez v. State, 98-577 (La.App. 3 Cir. 10/28/98), 721 So.2d 518. In such a case, the liability imputed upon the hospital must be viewed in light of the nurse's actions. See id. Thus, a hospital may be liable for the negligence of a nurse if the nurse violated the legal standards of negligence applicable for nurses.
In Migues v. Sagrera, 620 So.2d 463, 465 (La.App. 3 Cir.1993), we stated that a nurse may be negligent under the provisions of La.R.S. 40:1299.41(A) of the Louisiana Medical Malpractice Act, in the following circumstances:
Nurses and other health care providers are subject to the same standard as physicians. It is the nurse's duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of the nursing or health care profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his or her best judgment, in the application of his or her skill to the case.
(Emphasis added).
More specifically, La.R.S. 9:2794 sets forth three requirements which a plaintiff must satisfy to meet its burden of proving negligence of a nurse: (1) she must exercise the degree of skill ordinarily employed, under the circumstances, by the members of the nursing or health care profession in good standing in the same community or locality; (2) she either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with her best judgment in the application; and (3) as a proximate cause of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not, otherwise, have occurred.
The distinction of whether a suit is brought on the basis of a hospital's own liability or that of a nurse under the doctrine of respondeat superior is relevant to the analysis that we must perform, because the law pertinent to the standard of negligence applicable to nurses is conditioned upon the locality rule; whereas, the general rules of negligence are applicable to determine whether a hospital was negligent. La. R.S. 40:1299.41(A)(7); See Smith, 523 So.2d 815.

FAULT
In this instance, Thomas' petition states a cause of action against Memorial Hospital *552 based on the alleged negligence of its nursing staff. Her petition states: "Lake Charles Memorial Hospital deviated from applicable medical standards by failing to adequately supervise and observe plaintiff while hospitalized and more particularly, in failing to maintain the bed rails in the up position at night while plaintiff was asleep." Accordingly, in order to prevail, Latigue was required to (1) establish the standard of care applicable to the nursing staff, (2) a violation by the nurse of that standard of care, and (3) a causal connection between the nursing staff's alleged negligence and Thomas' injuries. In re Triss, 01-1921 (La.App. 4 Cir. 6/5/02), 820 So.2d 1204.
After reviewing the record, we find that the trial court erred in assessing twenty percent of the fault to Memorial Hospital, based on a finding that the nursing staff breached the standard of care required by failing to instruct Stephanie in the importance of maintaining the bed rails in the up position. A review of the trial transcript reveals that Latigue failed to satisfy the first element of her medical malpractice claim in that she failed to establish the standard of care applicable to nurses in this locale pertaining to this situation.
There are instances when a plaintiff need not introduce expert testimony in order to satisfy her burden of proof. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228. This refers to cases of obvious negligence, such as where the doctor amputates the wrong leg, leaves a sponge in the patient, or drops a knife, scalpel, or acid on the patient. Id. In those instances, a lay person can infer negligence without the aide of expert testimony. Id. If the matter does not involve an instance of obvious negligence, then the plaintiff may still establish the standard of care and breach thereof through the testimony of the defendant's expert witness. Sandifer v. Wise, 00-293 (La.App. 4 Cir. 2/7/01), 780 So.2d 1099.
Here we do not find that this was an instance of obvious carelessness. Thus, Latigue was still required to prove the standard of care applicable and the resulting breach therefrom. A review of the record reveals that she failed to introduce any expert testimony pertaining to the use of bed rails with patients such as Thomas. However, Memorial Hospital introduced the testimony of Gerald Bryant, RN, an expert in nursing, who stated that Thomas was a high risk patient for falling, who required all four rails in the up position. He further stated that having only two rails up would probably be a breach of the standard of care by the nursing staff. Thus, we find that Latigue established that the local standard of care would require that a patient in Thomas' condition should have all four bed rails in the up position.
However, Latigue failed to establish that the standard of care requires that the nursing staff instruct the family members as to the position of the bed rails. Bryant did testify that generally nurses do not instruct family members on the use of the bed rails. He stated:
Generally, you don't tell people. I mean, you don't tell them not to touch side rails, things like that. Most families won't do that kind of thing, because you have so many family members in and out of the room in the process of a day. So, you couldn't have contact with everyone who is going to do that. Otherwise, you would have to have someone stationed there to touch base with everybody who goes into a room and tell them what they can and can't do. So, no, you don't do that.
Dr. Arthur Primeaux, a member of the medical review panel, testified that they did not find that the nursing staff breached *553 the applicable standard of care in this instance. He stated that the review panel did not want to make a credibility call between Stephanie's version and that recounted by Mattinson. Instead, he stated that they reviewed the record as a whole before reaching a decision that Memorial Hospital met the appropriate standard of care in this matter.
Accordingly, we find that Latigue failed to present evidence establishing the standard of care applicable to the nursing staff at Memorial Hospital with regard to the need to instruct family members in the use of bed rails. Nor do we find that the testimony presented by Memorial Hospital satisfies her burden of proof. Thus, we find that the trial court erred in finding that Memorial Hospital was twenty percent at fault in causing Thomas' injury. The judgment of the trial court is reversed and Latigue's claims against it are dismissed.
Pursuant to this finding, the remaining assignments of error are rendered moot.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered dismissing the action of the plaintiff-appellee/appellant, Betty Latigue, against the defendant-appellant/appellee, Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital. The costs of this appeal are assessed to Latigue.
REVERSED AND RENDERED.