# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-101

**WANDA FAYE BUTLER, ET AL.**

**VERSUS**

**MIGUEL A. DEPUY, JR., M.D.**

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2002-1196,
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and John B. Scofield,[*] Judges.

**AFFIRMED.**

**Robert Hairford**
**Attorney at Law**
**219 Europe Street**
**Baton Rouge, Louisiana 70802**
**(225) 267-6786**
**Counsel for Plaintiffs/Appellants:**
 **Wanda Faye Butler**
 **Mirian Eileen Hertzler**
 **Gertherd Olen Ashworth, Jr.**
 **Prentice Edward Ashworth**
 **Rebecca L. Stanley**
 **Calvin William Ashworth**
 **Nina June Howard**
 **Sharon Ruth Woodard**
 **Lynn Jackson Ashworth**
 **Marvin Wendell Ashworth**

---

[*]John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore.*

**John E. Bergstedt**
**The Bergstedt Law Firm**
**One Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana  70629**
**(337) 436-4600**
**Counsel for Defendant/Appellee:**
      **Miguel A. DePuy, Jr., M.D.**

SULLIVAN, Judge.

Plaintiffs, the adult children of Thelma Ashworth, filed this medical malpractice action, alleging that the negligence of Dr. Miguel A. DePuy, Jr. resulted in their mother's death.[1] They appeal the dismissal of their suit on summary judgment. For the following reasons, we affirm.

### Facts and Procedural History

On February 1, 1999, Dr. DePuy, a cardiologist, attempted to implant a pacemaker in Mrs. Ashworth, an eighty-eight-year-old patient at Christus St. Patrick Hospital in Lake Charles, Louisiana. In his deposition, Dr. DePuy explained that he aborted the attempt when flouroscopic images of the procedure showed a "bowing" of the guide wire, indicating that it was pressing against a blood vessel wall. When Mrs. Ashworth's blood pressure began dropping, Dr. DePuy realized that a "vascular complication" had developed. He began emergency measures to support blood pressure and called for a cardiovascular surgeon to repair the damaged blood vessels. Dr. DePuy stated that there was a delay in getting a surgeon to the hospital because the paging system was not working, but he noted that Mrs. Ashworth did have a blood pressure when she was taken to surgery. Dr. DePuy witnessed part of the surgery, noting that Mrs. Ashworth's vessel walls were exceptionally thin and would bleed as the surgeon attempted his repair. Unfortunately, Mrs. Ashworth did not survive. The surgeon's postoperative report indicated multiple lacerations near the junction of the innominate vein and the superior vena cava.

On December 21, 2001, a medical review panel rendered an opinion that Dr. DePuy did not breach the appropriate standard of care as to the technique

---

[1] In their initial and amended petition, Plaintiffs are identified as Wanda Faye Butler, Mirian Eileen Hertzler, Gertherd Olen Ashworth, Jr., Prentice Edward Ashworth, Rebecca L. Stanley, Calvin William Ashworth, Nina June Howard, Sharon Ruth Woodard, Lynn Jackson Ashworth, and Marvin Wendell Ashworth.

employed during the procedure and in the subsequent management of Mrs. Ashworth's injuries. Plaintiffs then filed the instant suit on March 11, 2002. [2] On November 27, 2002, Dr. DePuy filed a motion for summary judgment, contending that no genuine issue of material fact existed as to his liability. In support of his motion, Dr. DePuy introduced the medical review panel opinion; the affidavit of a panel member; Plaintiffs' answers to interrogatories, dated July 29, 2002, in which they state that their expert has yet to be identified; and his own deposition. In opposition, Plaintiffs introduced the affidavits of three of Mrs. Ashworth's children present at the hospital, who stated that Dr. DePuy told them that "I had an [a]ccident, I've made a mistake" and that this was the first time in his thirty years of practice that something like this had happened.

After a hearing on January 31, 2003, the trial court took the matter under advisement. On May 28, 2003, the trial court found that summary judgment would be proper at that time, as Dr. DePuy's statements did not amount to an admission that he breached the standard of care. However, the trial court ordered that the record remain open for forty-five days for the introduction of additional evidence. On July 30, 2003, the trial court signed a judgment dismissing Plaintiffs' suit with prejudice, noting that more than forty-five days had elapsed without additional evidence in opposition to summary judgment.

On appeal, Plaintiffs have assigned five errors, but they essentially advance two arguments: (1) the trial court erred in granting summary judgment because their affidavits created a genuine issue of material fact as to whether Dr. DePuy breached the standard of care and (2) the trial court allowed insufficient time for them to find,

---

[2]Dr. DePuy's deposition, taken on March 14, 2001 for the medical review proceedings, indicates that St. Patrick Hospital was also a defendant at that time; however, Plaintiffs filed the present suit against Dr. DePuy only.

2

consult, and retain an expert witness, considering that a pre-trial order had not been issued setting forth discovery deadlines and a trial date.

## Opinion

It is well settled that appellate courts review summary judgments *de novo*, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action . . . ." La.Code Civ.P. art. 966(A)(2).

The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but rather he must point out that there is an absence of factual support for one or more elements essential to the claim. La.Code Civ.P. art. 966(C)(2). Once the mover has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. *Id.*

Plaintiffs contend that they have successfully rebutted the mover's showing on summary judgment by introducing affidavits that Dr. DePuy told family members at the hospital that he had an "[a]ccident" and made a "mistake" during their mother's cardiac procedure. They further argue that this statement is a judicial admission of

3

liability that relieves them of their obligation to produce expert medical testimony. We disagree with both assertions.

In *Davis v. Atchison*, 37,832, p. 6 (La.App. 2 Cir. 10/29/03), 859 So.2d 931, 935 (citations omitted) (emphasis added), the court explained the plaintiff's burden of proof in a medical malpractice action as follows:

> In a medical malpractice action, the plaintiff must prove the applicable standard of care, that the physician lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and the causal connection between the breach and the resulting injury. Generally at trial, a plaintiff must prove the applicable standard of care through expert medical testimony unless, "the physician does an obviously careless act . . . from which a lay person can infer negligence." Opinions from medical professionals are necessary for the determination of the applicable standard of care and whether or not that standard was breached. *Expert testimony is especially necessary where the defendant in a medical malpractice action has filed a motion for summary judgment supported by expert opinion evidence that his treatment met the applicable standard of care.*

The present case does not involve negligence so obvious that it could be inferred from the facts: it concerns an invasive procedure performed by a medical specialist. Clearly, Plaintiffs will be required to produce expert testimony to establish the applicable standard of care and whether a breach occurred. Additionally, as a physician, Dr. DePuy is not required "to exercise the highest degree of care possible, nor is he held to an absolute standard of precision." *Boudoin v. Crawford & Marshall, Ltd.*, 97-224, p. 26 (La.App. 5 Cir. 1/14/98), 709 So.2d 798, 808. We agree with the trial court that Dr. DePuy's reference to a "mistake" in conversation cannot be equated with an admission that he breached the standard of care of a cardiologist performing a pacemaker implantation.

We now consider Plaintiffs' argument that they were not given enough time to retain an expert, given that discovery deadlines had not been set and that the case had not been set for trial. In *Perricone v. East Jefferson General Hospital*, 98-343, p. 9

(La.App. 5 Cir. 10/14/98), 721 So.2d 48, 52 (citing *Richoux v. Tulane Medical Center*, 617 So.2d 13 (La.App. 4 Cir. 1993), the court recognized that "the only requirement for the filing of a motion for summary judgment is that the parties be given a fair opportunity to present their claim." The court then found no error in the refusal to give the plaintiff additional time for discovery, even though no cut-off date had been set, where two years had elapsed since the date of the accident and the medical review panel's opinion was issued one year before the defendants filed for summary judgment.

In the present case, Mrs. Ashworth died three years before this suit was filed, and the medical review panel opinion was issued almost one year before the motion for summary judgment was filed. At the hearing on the motion, the trial court specifically questioned Plaintiffs' counsel about the absence of expert testimony in support of their claim. The first ruling on summary judgment, issued four months after the hearing, gave Plaintiffs an additional forty-five days to retain an expert, although the trial court waited sixty days before dismissing the suit. On this record, we find that Plaintiffs were given a fair opportunity to present their claim.

On appeal, Plaintiffs state that they have retained an expert, whose report they did not receive within the deadlines set by the trial court, and they have attached that report to their brief. However, as recognized in *Reed v. Peoples State Bank of Many*, 36,531, p. 5 (La.App. 2 Cir. 3/5/03), 839 So.2d 955, 958, "[a]n appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence." Accordingly, we may not consider exhibits that were not filed into evidence, since they are not part of the record on appeal. *Id.* On the record before us, we find that summary judgment was properly granted.

**Decree**

5

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaintiffs-Appellants.

**AFFIRMED.**