STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-651

GEORGE & TINA VAUGHAN, INDIVIDUALLY AND ON BEHALF OF
THEIR MINOR SON, AUSTIN VAUGHAN

VERSUS

SANDERS VISION CENTER AND CHILDREN'S EYE CLINIC,
DR. CRAIG M. SANDERS

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2003-5414
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Billy Howard
Ezell, Judges.

AFFIRMED.

Michael J. Remondet Jr.
Scott F. Higgins
Jeansonne & Remondet
P.O Box 91530
Lafayette, LA 70509
(337) 237-4370
Counsel for Plaintiffs/Appellants:
    George & Tina Vaughan
    Austin Vaughan

Joseph B. Morton III

**Lawrence J. Duplass**
**Nicole M. Bowen**
**Duplass, Zwain, Bourgeois, Morton, Pfister & Weinstock, PLC**
**3838 N.Causeway Blvd., #2900**
**Metairie, LA 70002**
**Counsel for Defendants/Appellees:**
    **Chicago Ins. Co.**
    **Dr. Craig M. Sanders**
    **Children's Eye Clinic**
    **Sanders Vision Center**

**PICKETT, Judge.**

The plaintiffs, George and Tina Vaughan, individually, and on behalf of their minor son, Austin Vaughan, appeal a judgment of the trial court granting judgment in favor of the defendants, Dr. Craig M. Sanders, Sanders Vision Clinic, Children's Eye Care Center, and Chicago Insurance Company, dismissing their suit with prejudice and at their expense. We affirm the judgment of the trial court.

## FACTS

The minor plaintiff in this case, Austin Vaughan, failed a vision screening at his school in St. Martin Parish. A letter was sent home with the child informing the parents of this. Austin's mother, Tina Vaughan, took her son to Kids Med, a screening clinic for children on Medicaid. Kids Med referred Austin to the defendant, Dr. Craig M. Sanders, O.D. Dr. Sanders first saw Austin on February 3, 2000, when Austin was five years old. Dr. Sanders' records from that initial visit show that he determined Austin had 20/30 vision in his right eye and 20/400 vision in the left eye, for which he prescribed glasses. Dr. Sanders also diagnosed Austin with hyperopia, astigmatism, and amblyopia. He referred Austin to Dr. Rhonda Moser for vision therapy for the amblyopia as he did not offer that treatment. He did not see the child again until October 18, 2001, when he returned for new glasses. This was Austin's last visit. After consulting with a pediatric ophthalmologist, Dr. Richard J. Piccione, and learning that Austin would never have "normal" vision, the Vaughans filed suit against Dr. Sanders on October 9, 2003, alleging that because of Dr. Sanders' "mistreatment and misdiagnosis of Austin, [the child] now has diminished and/or incurable farsightedness, astigmatism, and amblyopia in his eyes."

The case was tried to a judge who ruled in favor of the defendant and this appeal followed.

## LAW AND DISCUSSION

On appeal the plaintiffs argue that the trial court erred in believing the defendant's testimony and in finding that the defendant had not breached his standard of care in treating Austin. The trial court's conclusions on these arguments required it to weigh testimony and evidence, i.e., to make factual determinations. The "gold standard" of appellate review in cases involving factual determinations was set out by the Louisiana Supreme Court in *Rosell v. ESCO*, 549 So.2d 840, 844(La.1989)(citations and footnote omitted):

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous--clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues *de novo*.

> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

Louisiana Revised Statutes 37:1041, et seq., governs the practice of optometry in this state. Louisiana Revised Statutes 37:1041(C)(5) states:

"Optometry" means that practice in which a person employs primary eyecare procedures or applies any means other than ophthalmic surgery, for the measurement of the powers and testing the range of vision of the human eye, and determines its accommodative and refractive state, general scope of function, and the adaptation of frames and lenses, including contact lenses in all their phases, to overcome errors of refraction and restore as near as possible, normal human vision. Optometry also includes the examination, diagnosis, and treatment, other than by ophthalmic surgery of abnormal conditions and pathology of the human eye and its adnexa, including the use and prescription of diagnostic and therapeutic pharmaceutical agents.

The terms "diagnostic and therapeutic pharmaceutical agents" are defined as follows:

"Diagnostic and therapeutic pharmaceutical agent" means any chemical in solution, suspension, emulsion, or ointment base, that when applied topically has the property of assisting in the diagnosis, prevention, treatment, or mitigation of abnormal conditions and pathology of the human eye and its adnexa, or those which may be used for such purposes, and oral antibiotics, and oral antihistamines, and certain approved narcotics, when used in treatment of disorders or diseases of the eye and its adnexa.

La.R.S. 37:1041(C)(2)(a).

An optometrist (O.D.) is not a medical doctor (M.D.) and an O.D.'s scope of treatment is limited when compared to that of an ophthalmologist, an M.D. who treats diseases and/or abnormalities of the eye. However, in any medical malpractice action the scope of the burden of proof is the same and is set forth in La.R.S. 9:2794:

A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by

3

physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

. . . .

C. In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician, dentist, optometrist, or chiropractic physician. The jury shall be further instructed that injury alone does not raise a presumption of the physician's, dentist's, optometrist's, or chiropractic physician's negligence.

The "degree of knowledge or skill possessed or the degree of care ordinarily exercised" is commonly referred to as the "standard of care." In *Young v. Mobley*, 05-547, p. 5 (La.App. 3 Cir. 3/1/06), 923 So.2d 917, 920-21, this court explained as follows:

Louisiana Revised Statute 9:2794 provides the applicable burden of proof for a plaintiff in a medical malpractice case. That article provides that a plaintiff must establish the following elements by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. Generally, expert testimony is required to establish the applicable standard of care and whether or not that standard of care was breached. *Butler* [*v. DePuy*, 04-101 (La.App. 3 Cir. 6/9/04)], 876 So.2d 259 (citing *Davis v. Atchison*, 37,832 (La.App. 2 Cir. 10/29/03), 859 So.2d 931). There is an exception to this general rule for cases where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Thomas v. Southwest La. Hosp. Ass'n.*, 02-0645 (La.App. 3 Cir. 12/11/02), 833 So.2d 548, *writ denied*, 03-0476 (La.4/25/03), 842 So.2d 401 (citing *Pfiffner v. Correa*, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228). We do not find that this is such a case[. . . .]. Accordingly, we find that Plaintiffs would be required to produce expert testimony to establish the applicable standard of care and a breach thereof. We note that it has

4

been recognized that a plaintiff can establish these things through the testimony of the defendant's expert witness.

The plaintiffs attempted to establish the standard of care Dr. Sanders owed to Austin and his parents through the deposition of Dr. Stephen O. Sessums (a defense witness) and the testimony of Dr. James Piccione, both pediatric ophthalmologists. Dr. Sessums stated that he had no opinion as to the standard of care for optometrists. Further, he opined that since Dr. Sanders did not treat amblyopia, it was appropriate for him to refer Austin to another optometrist who did. Dr. Piccione stated that he had never practiced optometry, but in the medical profession it was a common practice to refer patients to one's colleagues. He stated that if he didn't treat a particular condition, he would refer a patient to another physician who did. He admitted that Austin was not wearing his glasses when he arrived for his initial examination and that Mrs. Vaughan told him the glasses were "broken."

In sum, the record shows that Dr. Sanders made the appropriate diagnosis, that he prescribed glasses and that he referred Austin to a colleague for the treatment of amblyopia. Austin's parents did not follow up on the referral and did not ensure that Austin wore his glasses as prescribed. Even after consulting Dr. Piccione, Austin's parents failed to ensure he complied with Dr. Piccione's course of treatment—copious "patching" and the constant wearing of his glasses.

The trial judge found "that the plaintiffs failed to establish the standard of care for optometrists [and] [e]ven assuming that plaintiffs established the standard of care, . . . plaintiffs did not meet their burden of proofing [sic] that Dr. Craig M. Sanders was negligent or breached the standard of care for an optometrist." We find no clear error in the trial court's conclusions.

5

Accordingly, for the reasons stated above, we affirm the judgment of the trial court. All costs of this appeal are assessed against the plaintiffs, George and Tina Vaughan.

**AFFIRMED.**