STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1133

EARLINE THIERRY, ET VIR

VERSUS

STATE OF LOUISIANA, THROUGH
THE DEPARTMENT OF HEALTH AND
HOSPITALS AND UNIVERSITY MEDICAL
CENTER OF LAFAYETTE, LOUISIANA

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2004-5270, DIV. L
HONORABLE MARILYN C. CASTLE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Marc T. Amy, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

Jude D. Bourque
Assistant Attorney General
Louisiana Department of Justice
Division of Risk Litigation
P.O. Box 94005
Baton Rouge, LA 70804-9005
Counsel for Defendant-Appellant:
     State of Louisiana through the Board of Supervisors of
     LSU representing University Medical Center in Lafayette

**Alfred O. Pavy**
**Attorney at Law**
**P. O. Box 690**
**Opelousas, LA 70571-0690**
**Counsel for Plaintiffs-Appellants:**
**Earline Thierry, et vir**

**PAINTER, Judge.**

In this medical malpractice claim, Plaintiffs, Earline Thierry and Arthur Lee Thierry, appeal the trial court's grant of summary judgment in favor of Defendant, State of Louisiana through the Board of Supervisors of LSU representing University Medical Center in Lafayette. Defendant has answered the appeal to assert error in the trial court's denial of its motion to strike one of the expert affidavits submitted by Plaintiffs. For the following reasons, we affirm both the denial of Defendant's motion to strike and the summary judgment dismissing Plaintiffs' case.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Mrs. Thierry was sixty years old and had a long history of cardiac problems, including hypertension, coronary artery disease, and congestive heart failure. She suffered heart attacks in 1983 and 1989 and also underwent a triple bypass in 1987. She also had diabetes. On January 17, 2002, Mrs. Thierry was admitted to University Medical Center in Lafayette (UMC) with a chief complaint of shortness of breath which had been getting worse over the previous week. At the time of admission, she was on the following medications: Lasix, Glucophage, Vasotec, Divan, Glucotrol, Co-reg, Prevacid, and insulin. She was discharged on January 22, 2002, with written discharge instructions, including an instruction to return to the emergency room if she had any problems. Her medications on discharge were Potassium, Imdur, Digoxin, a multivitamin, Norvasc, Glucotrol, and insulin. She was also given a prescription for Zaroxolyn, among other things. Zaroxolyn is a diuretic. Mrs. Thierry was on two diuretics, Zaroxolyn and Lasix, on discharge. Dr. Robert Carroll, who treated Mrs. Thierry at UMC, later opined in deposition that one of the potential causes of the Digoxin toxicity may have been dehydration.

1

Mrs. Thierry alleges that she had the prescription for Zaroxolyn filled and took the first dose on January 24, 2002. She further alleges that after taking this first dose, she began to have tremors and shaking. Mrs. Thierry took the second dose of Zaroxolyn on January 25, 2002. She alleges that her symptoms worsened at that time, so she called the emergency room at UMC and reported her symptoms. She alleges that she was advised to continue taking her medication. Mrs. Thierry also asserts that her chart contains a notation, dated January 25, 2002, to alert the patient to stop taking Zaroxolyn but that there is an absence of any recorded response to her complaints. On January 26, 2002, Mrs. Thierry took the third dose of Zaroxolyn, and her condition worsened to the extent that she went to the emergency room at UMC with complaints of nonspecific chest pain. At that time, she was admitted to the intensive care unit with Digoxin toxicity and renal insufficiency. She required intubation. On January 30, 2002, the toxicity Digoxin was completely cleared. She was not discharged until February 12, 2002.

Mrs. Thierry filed a complaint against UMC alleging numerous acts of malpractice, including allegations that the nursing staff and physicians failed to respond to her oral complaint of January 25, 2002, negligently monitored her condition, failed to follow-up with her, caused Digoxin toxicity, and caused exacerbations of her pre-existing conditions. She alleged that she cannot drive because, ever since taking the Zaroxolyn, she gets shaky. She further alleged that ever since being intubated, she is hoarse. Mrs. Thierry also alleged that she has problems with weakness in her hand from the apparatus providing intravenous injections that was inserted there.

In due course, a medical review panel was formed with Dr. Tina Wells, Dr. Lana Metoyer, and Dr. David Booher as panelists. On August 4, 2004, the panel

rendered an opinion finding no breach in the standard of care. Specifically, the panel found that Zaroxolyn was appropriately prescribed to Mrs. Thierry, given her diagnoses but that there was a question of patient compliance causing the toxicity. Apparently, when Mrs. Thierry was re-admitted to UMC on January 26, 2002, her list of current medications included: Klor, Glucotrol, Vasotec, Neurontin, Spironolactone, Isosorbide, Zaroxolyn, Preevacid, Lasix, Norvasc, iron, and Lanoxin. These were not the same medications that were listed on the discharge list from January 22, 2002.

Following the unfavorable medical review panel opinion, Plaintiffs filed suit in district court. Plaintiffs obtained an affidavit from Dr. Metoyer which Plaintiffs assert was a "supplement" to her medical review panel opinion. In that affidavit, dated October 22, 2004, Dr. Metoyer retreated somewhat from her original opinion as given in the medical review panel proceedings. In the affidavit, Dr. Metoyer stated that the failure to respond to the patient's complaints on January 25, 2002 was substandard medical care by the nursing personnel and probably resulted in an aggravation of the patient's renal insufficiency, an exacerbation of her congestive heart failure, and Digoxin toxicity. Defendant then took Dr. Metoyer's deposition on February 16, 2006. Following that deposition, Defendant filed a motion for summary judgment alleging that there was no genuine issue of material fact and that Plaintiffs did not have an expert to contradict the opinion of the medical review panel such that they had no evidence to support the basic elements of their case. Following a hearing, the trial court granted Defendant's motion for summary judgment. Specifically, the trial court found that Plaintiffs failed to present factual support to establish that they would be able to satisfy their evidentiary burden of proof at trial that Mrs. Thierry suffered any damages due to the one-day delay in her reporting to

3

the emergency room. Plaintiffs assert that there several genuine issues of material fact that preclude a grant of summary judgment and now appeal.

Defendant answered the appeal, asserting that the trial court erred in denying its motion to strike and admitting the affidavit of Dr. Metoyer. Defendant argues that Dr. Metoyer's affidavit is based upon inadmissible hearsay from Plaintiffs' attorney and not on admissible medical records or facts.

**DISCUSSION**

*Motion to Strike*

We first address Defendant's contention that the affidavit of Dr. Metoyer was inadmissible since it was based upon hearsay information from Plaintiffs' attorney rather than upon personal knowledge. The trial court denied Defendant's motion to strike and, in its answer to Plaintiff's appeal, Defendant appeals that portion of the trial court's judgment.

Louisiana Code of Civil Procedure article 967 requires that affidavits submitted in connection with summary judgment be made on "personal knowledge," which "encompasses only those facts which the affiant saw, heard or perceived with his own senses." *Dominio v. Folger Coffee Co.*, 05-357, p. 4 (La.App. 4 Cir. 2/15/06), 926 So.2d 16, 18. Based on this, Defendant argues that Dr. Metoyer's affidavit must be stricken as it was not based upon personal knowledge. We disagree.

The Louisiana Supreme Court case of *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257, pp. 14-15 (La. 2/29/00), 755 So.2d 226, 235 has considered this issue:

> [I]t follows that we now adopt the *Daubert* standards for admissibility of expert opinion evidence at the summary judgment stage, as do the federal courts.
>
> After all, it would be inequitable and illogical to allow a party who has eyewitness testimony to be granted a summary judgment over

4

a party who has no eyewitness testimony, but who does have expert opinion evidence, which if believed, would contradict the eyewitness testimony. In such a case, the party with only expert opinion evidence may have actually prevailed at trial but would lose on summary judgment because his evidence would not be admissible as it is not based on personal knowledge. For example, a driver of a vehicle, claiming that her brakes were defective, may testify that she was pressing the brakes of her car but nonetheless the car increased its forward speed before a collision. She could file a motion for summary judgment attaching her affidavit attesting to the facts as she remembers them. The car or brake manufacturer, who has no eyewitness evidence, may nonetheless have expert opinion evidence that, based on his knowledge of the brake system and his training and experience, the brakes did not fail and the driver must have pressed the accelerator instead of the brakes. A jury may not believe the driver and may be convinced that based on the defendant's expert evidence, which is based on the circumstances of the case (i.e., increased, rather than decreased, speed), the driver did in fact press the accelerator and not the brakes, and would find in favor of the defendant at trial. In such a case, it would be illogical and inequitable to allow that same plaintiff, who would have lost at trial, to prevail on summary judgment because the defendant's evidence submitted in opposition to the motion was not based on personal knowledge under La. C.C.P. art. 967.

Expert testimony is frequently based on hearsay or other evidence that would be inadmissible at trial. For example, expert testimony based on police reports, which are inadmissible as hearsay, is allowable. *Wiley v. City of New Orleans*, 00-1544 (La.App. 4 Cir. 5/16/01), 809 So.2d 151, *writ denied*, 02-616 (La. 5/10/02), 815 So.2d 842, *writ denied*, 02-641 (La. 5/10/02), 815 So.2d 843. Furthermore, the admissibility of the opinion of the medical review panel and the testimony of the panelists is provided for by statute. La.R.S. 40:1299.47(H).

For these reasons, we find no error in the trial court's denial of Defendant's motion to strike the affidavit of Dr. Metoyer.

*Motion for Summary Judgment*

We will review this summary judgment *de novo*, "using the same criteria applied by the trial courts to determine whether summary judgment is appropriate." *Butler v. DePuy*, 04-101, p. 3 (La.App. 3 Cir. 6/9/04), 876 So.2d 259, 261 (citing

*Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730). In

*Butler*, 876 So.2d at 261, we explained that:

> The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but rather he must point out that there is an absence of factual support for one or more elements essential to the claim. La.Code Civ.P. art. 966(C)(2). Once the mover has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. *Id.*

The applicable burden of proof for a plaintiff in a medical malpractice case is found in La.R.S. 9:2794, which provides that a plaintiff must establish the following elements by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. Expert testimony is usually required to establish the applicable standard of care and whether or not that standard of care was breached. *Butler*, 876 So.2d 259 (citing *Davis v. Atchison*, 37,832 (La.App. 2 Cir. 10/29/03), 859 So.2d 931).

We do not find this to be a case of obvious negligence where expert testimony is not required because a lay person would be able to infer negligence without the guidance of expert testimony. *See Thomas v. Southwest La. Hosp. Ass'n.*, 02-654 (La.App. 3 Cir. 12/11/02), 833 So.2d 548, *writ denied*, 03-476 (La. 4/25/03), 842 So.2d 401. Therefore, we find that Plaintiffs would be required to produce expert testimony to establish the applicable standard of care, that there was a breach thereof, and that there was a causal connection between the breach and any resultant injuries. Plaintiffs rely on the deposition testimony of Dr. Carroll and the affidavit of Dr. Metoyer to meet their burden of proof. However, we agree with the trial court that Plaintiffs failed to present factual support to establish that they could satisfy the

6

evidentiary burden of proving that Mrs. Thierry suffered any damages caused by the one-day delay in her reporting to the emergency room. In her deposition, taken after she signed the affidavit submitted by Plaintiffs, Dr. Metoyer clearly stated that she had not found or received any evidence to indicate that her original medical review panel opinion was contradicted in any way. She further testified that it was not her opinion that any renal condition suffered by Mrs. Thierry at present was caused by either hospitalization at UMC. Importantly, even though Dr. Metoyer agreed that quicker intervention would have been helpful in alleviating Mrs. Thierry's complaints, Dr. Metoyer further testified as follows:

> Q:     . . . Did the time delay between this phone call and when she presented to the emergency room and was treated, what effect, if any, did that have on this patient's eventual outcome and how she is doing today?
>
> A:     It didn't have any effect.

Dr. Carroll does not address causation of Mrs. Thierry's alleged resultant injuries. Accordingly, we find that Plaintiffs failed to successfully rebut Defendant's showing on its motion for summary judgment and that the trial court's grant of summary judgment in favor of Defendant was, therefore, appropriate.

## DECREE

For all of the foregoing reasons, the judgment of the trial court is affirmed in its entirety. Costs of this appeal are assessed to Plaintiffs-Appellants, Earline Thierry and Arthur Lee Thierry.

**AFFIRMED.**

7